**LAKE AND PENINSULA BOROUGH,**
Petitioner,

v.

**LOCAL BOUNDARY COMMISSION,**
State of Alaska and City of Ekwok,
et al., Respondents.

**CITY OF EKWOK,** City of New Stuyahok,
City of Clarks Point, Koliganek Village
Council, Koliganek Natives, Ltd., Stuya-
hok Ltd., Ekwok Natives, Ltd., Choggi-
ung, Ltd., Aleknagik Natives, Ltd., Ma-
nokotak Natives, Ltd., and Saguyak,
Ltd., Inc., Cross–Petitioners,

v.

**LOCAL BOUNDARY COMMISSION,**
et al., Cross–Respondents.

Nos. S–5476, S–5485.

Supreme Court of Alaska.

Dec. 2, 1994.

**1060**

Bruce E. Falconer, Hicks, Boyd, Chandler & Falconer, Anchorage, for petitioner.

Don Clocksin, Sonosky, Chambers, Sachse, Miller, Munson & Clocksin, Anchorage, and Frederick Torrisi, Dillingham, for respondents and cross-petitioners.

Marjorie L. Odland, Asst. Atty. Gen. and Bruce M. Botelho, Atty. Gen., Juneau, for respondents and cross-respondents.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

COMPTON, Justice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This controversy concerns a portion of the Nushagak–Mulchatna watershed in Southwest Alaska. The Lake & Peninsula Borough (Borough), incorporated in 1989, originally encompassed a portion of the watershed within its northwest boundary. The "Nushagak villages"[1] and other respondents/cross-petitioners (Villages) are not located within the Borough, but rather represent subsistence users of the watershed.

### A. FACTS

The Borough was the product of a hurried incorporation effort promoted by the Lake & Peninsula School District (District).[2] The District determined that the northwest boundary of the Borough should coincide with that of the Lake & Peninsula Regional Educational Attendance Area (REAA) boundary.

The District filed a petition for incorporation of the Borough with the Department of Community & Regional Affairs (DCRA) on November 10, 1988. DCRA, which had been working with the District to prepare the petition, accepted the petition immediately.

The District then served copies of the petition materials on "every municipality in or adjoining the territory," as required by 19 Alaska Administrative Code (AAC) 10.370(a). It published notice of the filing of the petition in various newspapers[3] as required by 19 AAC 10.380(a). It also mailed to necessary parties and published in various newspapers[4] the dates and locations of Local Boundary Commission (LBC) hearings, as required by AS 44.47.573 and 19 AAC 10.400. Nonetheless, notice of the petition or the related hearings was *not* sent to Villages.[5]

Public LBC hearings were scheduled for December 3 and 4 in Newhalen, Iliamna/Port Heiden and Chignik. However, because of adverse weather the hearings were held telephonically between the Lake & Peninsula communities, Kodiak and Anchorage. Villages did not participate. In December LBC approved the petition, as amended in part to exclude a portion of Borough land that LBC simultaneously annexed to Kodiak.

The Bristol Bay Native Association (BBNA) then submitted written comments to LBC on behalf of Villages, objecting to the Borough's northwest boundary and seeking reconsideration of LBC's decision. The Borough and DCRA opposed. At a hearing, LBC denied reconsideration. However, in the wake of complaints by Villages that they

---

1. The Nushagak villages include Ekwok, Koliganek, New Stuyahok, Clarks Point and Aleknagik.

2. In 1987 the Aleutians East Borough had successfully incorporated a portion of the Lake & Peninsula region. Moreover, the Kodiak Island Borough was in the process of filing a petition to annex another portion of the region.

3. *Borough Post* (November 18, 25); *Bristol Bay Times* (November 18, 25, December 2); *Kodiak Mirror* (November 16, 18).

4. *Anchorage Daily News* (November 16, 17, 18); *Borough Post* (November 11, 18, 25, December 2); *Kodiak Mirror* (November 15, 16, 17); *Bristol Bay News* (November 18, 25).

5. Villages contend that no notice was published in the *Bristol Bay Times*, "the most widely read newspaper in the Nushagak region."

had not been permitted to testify, LBC scheduled another hearing. After the second hearing, LBC again denied reconsideration.

The Borough was incorporated on April 24, 1989, when its residents voted to approve the petition. AS 29.05.110(a). It has since begun the business of local government.

### B. PROCEEDINGS

Villages filed a complaint for declaratory and injunctive relief in the superior court in February 1989, naming LBC (and later the Borough) as defendant. The complaint alleged statutory and constitutional violations in setting boundaries and in providing notice of the incorporation process. It sought a judgment voiding LBC's incorporation decision and remanding the matter to LBC for further proceedings.

In January 1991 the superior court gave notice of its intent to dismiss the case pursuant to Alaska Civil Rule 16.1(g). Simultaneously, the Borough moved for summary judgment based on laches. Villages then moved for summary judgment based on alleged notice deficiencies. In response, the Borough, joined by LBC, sought dismissal based on the de facto incorporation doctrine. LBC also asserted the impropriety of proceeding other than by administrative appeal.

In July 1991 the superior court orally denied the motions for summary judgment and elected to treat the matter as an administrative appeal.[6] At that time the court opined

6. This ruling has not been appealed.

7. The court found that under 19 AAC 10.380(a) and .400, published notice of filing the petition and proof of such must precede published notice of the hearing. Accordingly, the court noted that only the November 18 hearing notice in the Anchorage Daily News both met the 15-day requirement of 19 AAC 10.400 and followed the initial publication of filing notice on November 18.

8. LBC initially joined the Borough, but has withdrawn its appeal.

9. The Borough filed a notice of appeal. Since no final judgment had been entered, we dismissed the appeal sua sponte, treated the notice as a petition for review, and granted the petition. Appellate Rule 402.

10. 19 AAC 10 was substantially reorganized in 1992. See AAC Register 123. The provisions in

that there were defects in the notice,[7] but did not determine their effect or the effect of the alleged de facto status of the Borough. In a later written decision the court found that (1) the notice violations had prejudiced Villages by abbreviating the time they had in which to voice opposition to the Borough's boundaries, and (2) the notice defects vitiated any "colorable" compliance necessary to find de facto incorporation status. It also rejected the Borough's laches defense. The attendant remedy was determined in a series of written responses to requests for clarification. See infra part II.C.1. The court declared the northwest boundary to be voidable and ruled that if LBC changed the boundary on remand, then there would have to be an election "restricted to approval of the new boundary versus retention of the existing boundary."

The Borough challenges the court's ruling regarding notice and laches.[8] Villages challenge the court's determination of the proper remedy. The LBC hearing has been stayed by mutual agreement of the parties.[9]

## II. DISCUSSION

### A. NOTICE

#### 1. Statute and Regulations.

The following statute and former DCRA regulations are relevant to this case.[10] Alaska Statute 44.47.573 provides:

this case last appear in their entirety in AAC Register 107. The new regulations are more explicit in their notice requirements. See 19 AAC 10.420–.640 (effective 1992).

The purpose of DCRA is "to render maximum state assistance to government at the community and regional level." AS 44.47.020. The Commissioner of Community and Regional Affairs (Commissioner or DCRA Commissioner) is the principal executive officer of DCRA. AS 44.47.010. "There [exists] in [DCRA] a local boundary commission," AS 44.47.565, which shall "develop proposed standards and procedures for changing local boundary lines; ... consider a local government boundary change requested of it by ... the [DCRA commissioner]; ... [and it may] conduct meetings and hearings to consider local government boundary changes...." AS 44.47.567(a)(2), (3), (b)(1).

Notice of public hearings. Public notice of a hearing of the local boundary commission shall be given in the area in which the hearing is to be held at least 15 days before the date of the hearing.... The [DCRA] commissioner shall give notice of the hearing at least three times in the press, through other news media, or by posting in a public place, whichever is most feasible.

Former 19 AAC 10.370 (reorganized 1992) provides in part:

SERVICE. (a) The petitioner shall, by certified mail, serve a copy of the petition and brief, together with accompanying exhibits, to every municipality in or adjoining the territory. The service shall be made at the same time that the petition is filed with the [DCRA] commissioner.

Former 19 AAC 10.380 (reorganized 1992) provides in part:

NOTICE OF PETITION. (a) Upon receipt of notice from the [DCRA] that the petition and brief have been accepted, the petitioner shall cause notice of the filing of the petition to be published in a newspaper of general circulation in the territory, or if a newspaper of general circulation is not available, post notice in at least three public and prominent locations....

(b) The petitioner shall furnish the [DCRA] commissioner with proof of compliance with (a) of this section. Upon receipt of the proof, the commissioner shall submit the petition and brief to the [local boundary] commission.

Former 19 AAC 10.400 (reorganized 1992) provides:

CALL FOR HEARING. The [local boundary] commission will establish a time and place for a hearing regarding the proposed incorporation which shall be held in or near the territory proposed for incorporation. The commission will publish notice of the hearing at least 15 days before the date of the hearing, at least three times in a newspaper of general circulation in the territory, through other news media, or by posting in a public place, whichever is most feasible.

### 2. Standard of Review.

■ We review both an agency's interpretation of its own regulations[11] and an agency's exercise of its discretionary authority under the "reasonable basis" standard. *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982); *Mobil Oil Corp. v. Local Boundary Comm'n*, 518 P.2d 92, 98 (Alaska 1974); *Kelly v. Zamarello*, 486 P.2d 906, 916–17 (Alaska 1971). Moreover, because the superior court acted as an intermediate appellate court, we do not give deference to its decision. *National Bank of Alaska v. State, Dep't of Revenue*, 642 P.2d 811, 816 (Alaska 1982).

### 3. Notice of the LBC Hearings Was Defective in This Case.

■ Villages note that the relevant regulations mandate the following orderly process: a petition is filed; the petitioner must then provide public notice of the petition (filing notice); the petitioner must then provide proof of such notice to the Commissioner; the Commissioner then informs LBC; LBC must then provide public notice of the incorporation hearing (hearing notice). Villages contend that this orderly process was not followed and, as a result, the Borough's incorporation effort was defective.[12] The supe-

---

**11.** "An administrative agency's interpretation of its own regulation is normally given effect unless plainly erroneous or inconsistent with the regulation." *State, Dep't of Highways v. Green*, 586 P.2d 595, 602 n. 21 (Alaska 1978) (citing 1A Charles Sands, *Sutherland Statutory Construction* § 31.06, at 362 (4th ed. 1972)).

**12.** Villages also argue that notice was defective because it failed to provide personal service of the petition to Villages "adjoining" the Borough. *See* 19 AAC 10.370 (reorganized 1992). Even though counsel for Villages conceded that no direct notice was required under the statute, they contend they assumed that adjoining meant "touching." They contend that the historical LBC interpretation of the term "adjoining" is "within 25 miles of the boundary line." The Villages of Ekwok and New Stuyahok are within fifteen miles of the boundary line. Under current regulations, personal service of the petition is required for "every municipality within an area extending 20 miles beyond the boundaries of the territory proposed for change." 19 AAC 10.460(a) (effective 1992). In view of our disposition of this case, we do not need to address this issue.

rior court agreed with the Villages and concluded that notice was defective.

The Borough argues that it complied with the requirements of AS 44.47.573, and that the superior court's interpretation of the regulations is incorrect; no provision requires that the petitioner file notice of the petition *prior to* LBC's hearing notice. Further, the Borough argues that the superior court erred in concluding that former 19 AAC 10.380(b) and 10.400 link the discrete procedures of filing notice and hearing notice, and that there is no requirement that a petition be "pending" before LBC prior to publication of hearing notice.[13] Indeed, former 19 AAC 10.380(c) provided:

> A petition filed with the commissioner may not be considered to be pending before the commission until the petition and brief have been submitted to the commissioner pursuant to this section.

Absent a link between filing notice and hearing notice, the Borough contends that there was no "contraction" of the notice period. Thus, the Borough concludes that LBC merely had to publish three notices at least fifteen days before the hearing, i.e., on or before November 18.[14]

We agree with the superior court and Villages that published notice of filing the peti-

tion and proof of such must precede published notice of the hearing.

The regulations make clear that filing notice, which occurred on November 18, had to *precede* hearing notice:

> (1) former 19 AAC 10.370 required the petitioner to file the petition with the commissioner;
>
> (2) former 19 AAC 10.380 required that the petitioner then publish filing notice, and provide proof of the same to the commissioner,[15] after which the commissioner would submit the petition to LBC;
>
> (3) only at that point could LBC publish hearing notice as required by 19 AAC 10.400.

In this case the Borough published filing notice as follows:[16]

| | |
|---|---|
| Borough Post | Nov. 18, 25 |
| Bristol Bay Times | Nov. 18, 25, Dec. 2 |

Thus, LBC could not properly have taken steps to notice the hearings until *after November 18.*

The regulations also dictate that LBC had to publish three hearing notices at least fifteen days before the hearing, i.e., *on or before November 18.* The hearing notices were published as follows:[17]

| | |
|---|---|
| Anchorage Daily News | Nov. 16, 17, 18 |
| Borough Post [18] | Nov. 11, 18, 25, Dec. 2 |
| Bristol Bay News | Nov. 18, 25. |

**13.** The Borough argues that the superior court's decision is erroneously premised on the fact that the Commissioner's submission of the petition to LBC is a prerequisite to LBC's publication of hearing notice. AS 44.47.573 does not suggest such a link: "[t]he *commissioner* shall give notice of the hearing...." (Emphasis added). The implementing regulation, former 19 AAC 10.400, was slightly different: "[T]he *commission* will publish notice of the hearing." (Emphasis added). The Borough argues that the statute is controlling: "[T]o be valid a regulation must be consistent with the authorizing statute and reasonably necessary to carry out the statute's purpose." *Trustees for Alaska v. State, Dep't of Natural Resources,* 795 P.2d 805, 812 & n. 11 (Alaska 1990). We disagree. The regulation is not inconsistent with the statute, but was enacted pursuant to AS 44.47.980: "[T]he [DCRA] may adopt regulations ... to carry out the purposes of this chapter."

**14.** The Borough argues that only the first of its three newspaper notices had to precede the hearing by fifteen days. We disagree. The superior court correctly concluded that the fifteen-day period should run from the date of the *last* of the

three required publications. *See Moore v. State,* 553 P.2d 8, 21 (Alaska 1976) (requiring full week to run between last of required publications on "three consecutive weeks" and sale of oil and gas lease).

**15.** The record does not indicate that the Borough provided proof of such notice to the commissioner.

**16.** There was also publication of notice in the *Kodiak Mirror* on November 16 and 18. However, the Borough admits that "[t]his was ... done given Kodiak's competing petition. The Borough does not contend that the *Kodiak Mirror* is a paper of general circulation within the Lake and Peninsula territory."

**17.** Notice was also published in the *Kodiak Mirror* on November 15, 16 and 17.

**18.** Villages concede that the *Borough Post* is a newspaper of general circulation in the Borough even though it is not distributed in the Nushagak community.

November 18 is simultaneously the earliest and latest date for three newspaper notices of the hearings. In the words of the superior court, this amounted to a "substantial contraction" of the notice period, and a defect in incorporation.[19]

■ We agree with Villages and the superior court that the notice violations were substantial.[20] Accordingly, we affirm that portion of the superior court's decision and remand to LBC for reconsideration, following the requisite notice procedures.[21]

### B. *LACHES*

■ We have recognized laches to be a defense to suits challenging municipal formation. *Pavlik v. State Dep't of Community & Regional Affairs,* 637 P.2d 1045 (Alaska 1981); *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 456–58 (Alaska 1974). The defense requires unreasonable delay by a plaintiff resulting in prejudice to the defendant. *Concerned Citizens,* 527 P.2d at 457. These concepts exist on a continuum: "where there is a long delay, a lesser degree of prejudice will be required." *Pavlik,* 637 P.2d at 1048.

■ The superior court rejected the laches defense.[22] The Borough contends that it erred in doing so, making the following argument. If Villages had properly appealed LBC's boundary decision pursuant to AS 29.05.100(b), then the case could have been resolved prior to the incorporation election. Instead, Villages filed an independent action, later converted to an appeal, in February 1989. Unreasonable delay occurred as the case "lay dormant" for eighteen months (i.e., from June 1989 until January 1991, when the superior court informed Villages of its intent to dismiss for want of prosecution). Prejudice resulted from the delay because in the interim, "the Borough proceeded with the business of local government."

Villages respond that "laches is an equitable defense inapplicable to actions at law." *Gudenau v. Bang,* 781 P.2d 1357, 1363 (Alaska 1989); *Kodiak Electric Ass'n v. DeLaval Turbine, Inc.,* 694 P.2d 150, 157 (Alaska 1984).

We agree with Villages. In *Kodiak Electric,* we noted "[w]hen a party is seeking to enforce a legal right, as opposed to invoking the discretionary equitable relief of the

**19.** The superior court reasoned that the regulations "distinguish[ ] between the commissioner and the Commission.... If [the petition is] not pending before the Commission, it's hard to understand how ... the Commission could [publish notice of a hearing]."

**20.** The Borough argues that it should receive the protection of the *de facto* incorporation doctrine. The Villages argue that the *de facto* doctrine should not apply because: (1) the Alaska Legislature abolished the *de facto* doctrine with respect to private corporations, AS 10.06.218; and (2) even if the doctrine has not been abolished for municipal corporations, there was no colorable compliance with the statutory requirements.

In *Port Valdez Co., Inc. v. City of Valdez,* 522 P.2d 1147 (Alaska 1974), we held that four elements must be present in order to establish a *de facto* defense:

(1) a constitutional or statutory provision under which the [incorporation] might lawfully have been accomplished; (2) an attempted compliance in good faith with the provision(s); (3) a colorable compliance with the provisions(s); and (4) an assumption in good faith of municipal powers.

*Id.* at 1154. We need not decide whether the Legislature meant to abolish both municipal and private *de facto* corporations, because the Bor-

ough has failed to establish colorable compliance with the notice provisions, as detailed above.

**21.** On remand, LBC may consider the underlying merits of Villages' original complaint, i.e., that the northwest boundary of the Borough "fail[s] to conform generally to natural geography." *See* AS 29.05.031.

**22.** "We will not overturn a trial court's decision that an action is barred by laches unless we have a firm and definite conviction that a mistake has been committed." *Pavlik,* 637 P.2d at 1047.

The Borough acknowledges that the defense is "typically raised in response to delays in filing suit, ... [but] applies to post-filing delay as well" because such application serves the state's policy to resolve challenges to municipal formation quickly. *See* AS 29.05.150 (prescribing six-month statute of limitations for challenging municipal incorporation). Villages respond that Alaska cases limit the laches defense to situations in which the plaintiff has "unreasonably delayed in *bringing the action.*" *Foster v. State,* 752 P.2d 459, 465 (Alaska 1988). Moreover, Villages contend that in other jurisdictions applying laches to post-filing delays, courts have required a demonstration of belief of abandonment. *See Butcher v. City of Albuquerque,* 95 N.M. 242, 245, 620 P.2d 1267, 1270 (1980).

courts, the applicable statute of limitations should serve as the sole line of demarcation for the assertion of that right." 694 P.2d at 157. In this case, Villages' action was timely filed; the action proceeded at law and the equitable defense of laches was inapplicable.

## C. REMEDIES

### 1. Proceedings in the Superior Court.

Following oral argument on November 13, 1992, the superior court "took the issue of remedy under advisement." The parties agreed that "reconsideration ... should be limited to the precise drawing of the Borough's northwest boundary." The Borough and LBC opposed any action that could result in disincorporation. They favored detachment. Villages opposed detachment because the standards for detachment are more stringent than those applicable to incorporation.[23] The superior court concluded that detachment was not a viable remedy:

> [I]t is readily apparent that the Local Boundary Commission could determine that different boundaries are warranted under the more general incorporation standards, but that detachment would not be justified under the narrow criteria of the applicable regulation.

It concluded that the proper remedy was an election limited to the placement of the northwest boundary.[24]

The Borough moved for reconsideration seeking, *inter alia*, clarification of the meaning of "restricted" election.[25] The court denied the motion, but stated that

> the reconsideration process ... starts from the premise that the existing boundary ... is in place. The Commission and Borough residents will ultimately have to decide whether to maintain or alter the existing boundary. It was not the court's intention that the voters be presented with the choice of no northwest boundary, and thus no borough.

The Borough requested further clarification of "the nature of any election that would be held in the event the LBC determines that the northwest boundary should change." The court emphasized that "any change in borough boundaries must be approved by the electorate," rather than LBC, but again noted that "any election would have to be limited to approval or disapproval of a change in the borough's northwest boundary."[26]

### 2. The Superior Court Erred in Formulating a Remedy.

The superior court's final order regarding remedy provides:

> Should the LBC decide that the northwest boundary of the [Borough] should remain unchanged, no election would be required; should the Commission decide otherwise, an election restricted to approval of the new boundary versus retention of the existing boundary would be required.

Villages cross-appeal the superior court's decision. The issue concerns only the situa-

---

23. *See infra* part II.C.2.

24. The court ordered that (1) the Borough's northwest boundary was voidable due to defective notice; (2) LBC had to reconsider the northwest boundary following required notice and hearing provisions; and (3) a restricted election be held.

25. At the same time, LBC presented three questions regarding clarification of the remedy to the court, to which it received the following answers:

> [Q] (1) [Is] the LBC ... required to conduct on [sic] election on the issue of the northwest boundary of the [Borough] even if, after reconsideration pursuant to the court's decision, the LBC determines the northwest boundary should remain the same[?]
> [A (1) No. The court requested supplemental briefing; the parties thereafter "agreed that no

election would be required should the Commission vote to retain the present boundary."]
> [Q] (2) [Will] an election limited to the question of the northwest boundary ... correct the *de facto* incorporation deficiency of the [Borough?]
> [A (2)] [A]dhering to the procedures outlined in the [oral] decision, as supplemented hereafter on the election question, will cure the deficiencies found in the decision and render the incorporation no longer voidable.·
> [Q] (3) [I]f no election is required and the LBC does not change the northwest boundary, what is the legal status of the [Borough] under the court's decision?
> [A (3)] [S]ame as was provided in response to Question No. 2.

26. The court acknowledged Villages' opposing argument that the results of such an election would be "foreordained."

tion in which, upon reconsideration, LBC changes the boundary to exclude the Nushagak watershed. Villages argue that Borough voters should be given a choice of "changed boundary or no borough." The Borough responds that the superior court correctly defined the election as a choice of "changed boundary or previous boundary."

Villages argue that "boundary decisions should be made by the Local Boundary Commission or the Legislature, not the voters."[27] *See City of Douglas v. City & Borough of Juneau,* 484 P.2d 1040, 1042–43 (Alaska 1971); *Oesau v. City of Dillingham,* 439 P.2d 180, 183–84 (Alaska 1968); *Fairview Pub. Util. Dist. No. 1 v. City of Anchorage,* 368 P.2d 540, 543 (Alaska), *cert. denied,* 371 U.S. 5, 83 S.Ct. 39, 9 L.Ed.2d 49 (1962). They conclude that "[t]he superior court's decision to essentially remand this matter back to Borough voters goes against the [Alaska C]onstitution, the statutes, and indeed the very purpose of the LBC."[28]

■ We agree. It does not appear that a municipality can ignore an LBC boundary decision. An election permitting voters to choose between two boundaries essentially allows the electorate to establish the boundary without regard to LBC's action on reconsideration. In *Fairview,* this court examined the purpose of Article X of the Alaska Constitution and determined that "local political decisions do not usually create proper boundaries and that boundaries should be established at the state level."[29] 368 P.2d at 543; *accord* 1 Dallas Sands et al., *Local Government Law* § 8.29 (1994).

■ The Borough argues that detachment is the proper remedy. Villages respond that the *detachment* standard differs from the *incorporation* standard. The standard for incorporation is found in AS 29.05.031(a)(2), which provides in part:

> [T]he boundaries of the proposed borough [must] conform generally to natural geography and include all areas necessary for full development of municipal services.

The standard for detachment applicable at the time Villages filed suit was found in 19 AAC 10.230(a)(2) (reorganized 1992), which provided in part:

> In determining whether to approve a detachment, the commission will consider, but is not limited to ... whether the geographic location or configuration of the territory precludes the provision of borough services provided other areas of the borough or makes the provision of borough services impractical....

Villages express two concerns regarding the differing standards:

> There is no mention of natural geography in the detachment regulation nor any provision that makes it likely that the concerns of an unincorporated borough would be heard. Moreover, there remains the question of which party would carry the burden of proof. Under the statutory incorporation standards, the Borough incorporators have to justify the inclusion of all the territory which they wish [to] incorporate. Under the detachment regulations, previous compliance with the incorporation standards is presumed.

**27.** Article X, section 12 of the Alaska Constitution provides:

> Boundaries. A local boundary commission or board shall be established by law in the executive branch of the state government. The commission or board may consider any proposed local government boundary change. It may present proposed changes to the legislature during the first ten days of any regular session. The change shall become effective forty-five days after presentation or at the end of the session, whichever is earlier, unless disapproved by a resolution concurred in by a majority of the members of each house. The commission or board, subject to law, may establish procedures whereby boundaries may be adjusted by local action.

**28.** Villages note that

> [i]f the voters choose disincorporation, they obviously do not consider it a devastating prospect. It is axiomatic that all political power is inherent in the people, *Alaska Const. Art. I, § 2,* and the people already hold the power to dissolve a unit of local government. AS 29.06.460 *et seq.*

**29.** The Fairview Public Utility District argued that it had been annexed improperly to the City of Anchorage by legislative action instead of petition-election. *Fairview,* 368 P.2d at 541, 543. This court affirmed the annexation, expressing concern for objectivity in making boundary decisions. *Id.* at 543–44.

We agree that detachment will not adequately remedy Villages' concerns. In fashioning a remedy, the superior court was guided by *Alaska Community Colleges' Federation of Teachers v. University of Alaska (ACCFT)*, 677 P.2d 886 (Alaska 1984), and its direction that "approximation of the status quo at the time of the original decision is desirable."[30]  *Id.* at 890. However, the court recognized the difference between an "ideal" remedy and a "practical" remedy, and cautioned that "the damage to the public good" should not outweigh the "benefits derived" from the remedial action. *Id.* at 890, 892.

We hold that under *ACCFT*, an election between no borough or a borough excluding the Nushagak watershed will best approximate the status quo. *See* 677 P.2d at 890. The prospect that the Borough will not be incorporated does not constitute "damage to the public good" outweighing the benefits of remedying the notice violations. *See id.* at 891–92.

## III.  *CONCLUSION*

We AFFIRM the court's conclusion that notice was defective and did not substantially colorably comply with the requirements. Accordingly, we REMAND the case to LBC for consideration of whether LBC complied with the statutes addressing municipal boundary determination. This consideration can be undertaken only after all statutory requirements have been met.

If LBC does not change the boundary, no new election will be required. However, if LBC changes the boundary, then the Borough must hold an election in which voters would have to choose either (1) to incorporate according to the changed boundary, or (2) not to incorporate. Thus, we REVERSE the superior court's formulation of a remedy in this case.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.[31]

---

**30.**  *ACCFT* has guided Alaska courts in fashioning remedies, even outside the context of the Open Meetings Act. *See Matanuska–Susitna Borough v. Hammond*, 726 P.2d 166, 183 n. 32 (Alaska 1986).

**31.**  We granted expedited consideration and issued an order on July 22, 1994 that forms the basis for this opinion.