Margret A. MULLINS, Appellant,

v.

LOCAL BOUNDARY COMMISSION,
and State of Alaska Division of
Elections, Appellees.

No. S–12912.

Supreme Court of Alaska.

March 12, 2010.

Margret A. Mullins, pro se, Delta Junction.

Marjorie L. Vandor, Assistant Attorney General, and Richard A. Svobodny, Acting Attorney General, Juneau, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Margret Mullins filed a suit in superior court challenging the decision of the Local Boundary Commission (LBC) to approve a petition for incorporation of the Deltana Borough. She sought to stay the election in which voters would decide whether to incorporate the proposed borough. The superior court denied Mullins's motion to stay the election, and when voters overwhelmingly rejected the incorporation of the proposed borough, the superior court dismissed her lawsuit as moot. Mullins appeals. Because only declaratory relief is available to Mullins on claims presented to the superior court, and because claims of this nature are not likely to consistently escape judicial review, we affirm the superior court's dismissal of the lawsuit on mootness grounds.

## II. FACTS AND PROCEEDINGS

### A. Facts

On January 3, 2006, 259 voters in the Delta–Greely region filed a "Petition to the Local Boundary Commission for Incorporation of the Deltana Borough, a Unified Home–Rule Borough" seeking to incorporate as a borough the Delta–Greely Regional Educational Attendance Area. Staff for the LBC published a preliminary report in November 2006 and a final report in February 2007, both of which recommended approval of the petition. The LBC received written public comments on the petition and the preliminary report.

On March 16, 2007, the LBC held a public hearing on the petition in Delta Junction, which was attended by 251 people. Prior to the hearing, the five members of the LBC, along with two staff, toured parts of the proposed borough by vehicle. The following day, the LBC convened a decisional meeting and granted the petition by unanimous vote. This decision was memorialized in a written statement of decision, issued on April 12, 2007, in which the LBC made factual findings that the standards for borough incorporation were met. Seven requests for reconsideration were filed by the public, including one request filed by Mullins, challenging numerous aspects of the statement of decision. These requests were all denied after public meetings.

On May 11, 2007, the LBC notified the Alaska Division of Elections of its approval of the petition and directed the Division to order a referendum election on the proposed incorporation of the Deltana Borough. The Division ordered a vote-by-mail election, with an election date of August 21, 2007. The election's purpose was to decide: (1) whether to incorporate the Deltana Borough; (2) whether to approve certain prerequisites to incorporation, including an "Agreement for Payment in Lieu of Taxes" between Delta Junction and Teck–Pogo, Inc., a mining company (the "Pogo PILOT agreement") and taxes on heating fuel, vehicle gas, and electrical power; and (3) who the mayor and borough assembly members would be if the borough were incorporated. The vote-by-mail election was held as scheduled and the residents of the proposed Deltana Borough voted overwhelmingly against the borough incorporation and also rejected the combined ballot question regarding the Pogo PILOT agreement and proposed taxes.

In response to several complaints filed prior to the election, the ombudsman for the State of Alaska investigated the LBC's process of approving the petition. In the final report, not issued until March 30, 2009, the ombudsman found a number of irregularities in the LBC's process, including a failure to issue adequate public notice, a failure to accommodate the substantial Russian language minority in the region, and a failure to engage in "government-to-government consultation" with the Mendas Cha–Ag Tribe at Healy Lake.

## B. Proceedings

On June 11, 2007, after the final request for reconsideration of the LBC's approval of the petition was denied and before the incorporation election was held, Mullins filed an appeal before the superior court challenging the LBC's decision. Her appeal was heard by Superior Court Judge Randy M. Olsen. Mullins raised twenty-two points on appeal, alleging that the LBC committed numerous errors in approving the petition and challenging various election procedures. Mullins later attempted to amend her appeal to add claims directly against the Director of Elections.

On July 9, Mullins moved for a preliminary injunction to stay the election, and she requested an expedited hearing on her motion. The superior court held a hearing on July 20 to consider Mullins's motion. Mullins, who was to participate by telephone, did not call in to the hearing until approximately seventeen minutes after it began, apparently because she had the wrong number. At the hearing, the court stated that it would issue a decision on Mullins's motion to stay the election by July 27—three days before ballots were to be sent out. On July 27, the superior court denied Mullins's motion. Mullins's request for reconsideration of this decision was denied on August 22, 2007, one day after the election.

After the Director of Elections certified the vote against incorporation of the Deltana Borough, the LBC moved to dismiss Mullins's administrative appeal as moot, arguing that the vote against incorporation "rendered void" the LBC's decision to approve the petition and that "no relief is available" to Mullins. The superior court granted this motion and dismissed Mullins's appeal on October 5, only four days after the LBC's motion was filed. Mullins filed an opposition to the LBC's motion to dismiss on October 17 and, on October 23, a "Motion and Affidavit for this Court To Vacate Its Order Dismissing this Case in Its Entirety, and Protest against the Violations of this Pro Se and Public Interest Appellant's Civil Rights, Including the Denial of Due Process of Law by this Court." On November 21, the superior court issued an order of clarification reaffirming its dismissal of Mullins's lawsuit as moot.

## III. STANDARD OF REVIEW

 Mullins requests that we review all decisions made by the superior court. She lists forty-seven alleged errors, both procedural and substantive, in her statement of points on appeal. We review the superior court's procedural decisions for abuse of discretion.[1] We review questions of mootness under the independent judgment standard.[2]

## IV. DISCUSSION

In her administrative appeal, Mullins identified legitimate problems with the process leading up to the approval of the petition to incorporate the Deltana Borough. But the public has now rejected the incorporation of the proposed borough, as Mullins urged it to do. The question before us, then, is whether there is further relief to be granted to Mullins, and if not, whether an exception to the mootness doctrine should apply to this appeal.

Mullins's allegations fall roughly into three categories: (1) alleged procedural errors by the superior court; (2) alleged defects in the approval of the petition by the LBC; and (3) alleged defects in the election process. We address each allegation of error in turn.

### A. Alleged Procedural Errors by the Superior Court

Mullins alleges that the superior court made a series of procedural errors while considering her administrative appeal: that the superior court ruled on the LBC's motion to dismiss the complaint without affording Mullins an opportunity to file an opposition; that the superior court delayed sending Mullins the order of dismissal and order of clarification; and that the superior court gave Mullins the wrong call-in number for the July 20 hearing. She argues that these claimed errors violated her constitutional

---

1. *Walker v. Walker,* 151 P.3d 444, 447 (Alaska 2007).

2. *Akpik v. State, Office of Mgmt. & Budget,* 115 P.3d 532, 534 (Alaska 2005).

rights and require us to reverse the dismissal of her appeal.

■ Mullins first complains that the superior court failed to allow her adequate time to respond to the LBC's motion to dismiss. Her claim has merit—it was an abuse of discretion to rule on the LBC's motion only one week after it was served on Mullins, well before the eighteen days in which Mullins had to file her opposition had elapsed.[3] But the superior court's failure to allow Mullins adequate time to respond does not require a reversal of its decision because Mullins can show no resulting prejudice.[4] After the superior court made its initial ruling, Mullins filed an opposition to the LBC's motion to dismiss the appeal as moot and then a motion to vacate the superior court's dismissal of her lawsuit as moot. Thereafter, the court issued an order of clarification reaffirming the dismissal of the appeal. Because the superior court considered Mullins's position and arguments regarding why her appeal should not be dismissed as moot, Mullins was not prejudiced by the court's premature decision.[5] Moreover, we now apply our independent judgment in deciding the LBC's motion to dismiss the case on mootness grounds without reference to the opinion of the superior court. Our de novo review of the merits of the LBC's motion to dismiss will cure any prejudice that Mullins potentially suffered from the superior court's procedural error.[6]

■ Mullins expresses further concern that the superior court did not mail its order of dismissal until four days after it was entered or its order of clarification until seven days after it was entered. This delay in distribution caused no prejudice to Mullins because the time for appeal, review, and reconsideration of the written order did not begin until the date shown in the clerk's certificate of distribution.[7] It therefore does not require us to reverse the dismissal of Mullins's appeal.

■ Finally, Mullins complains that the superior court provided her with the wrong phone number for the July 20 hearing on her motion for a preliminary injunction. Even if the court accidentally provided Mullins with an incorrect number for the hearing,[8] such a mistake would not merit reversal of the court's decision. Mullins was able to join the hearing after a short delay and, after the court summarized the part of the hearing she missed, she was provided with an opportunity to be heard. Furthermore, the court made no substantive rulings at or based on the July 20 hearing but only set a briefing schedule.

We thus conclude that none of the alleged procedural errors by the superior court support the reversal of its dismissal of Mullins's appeal.

### B. Alleged Substantive Errors by Superior Court in Dismissing Case as Moot

The crux of Mullins's appeal is that it was error to dismiss her administrative appeal as

---

3. The LBC's motion was served by mail on Mullins on September 28, 2007. Pursuant to Rule 77(c)(2)(ii) of the Alaska Rules of Civil Procedure, a party has fifteen days from the date of service to file an opposition to a motion to dismiss. This deadline is extended by three days if service is made by mail, as it was in this case. Alaska R. Civ. P. 6(c). Mullins should have had eighteen days, until October 16, to respond to the LBC's motion. Instead, the superior court dismissed her lawsuit on October 5.

4. *Boggess v. State*, 783 P.2d 1173, 1182 (Alaska App.1989) ("Even [where] discretion is abused, reversal will be required only upon a showing of prejudice.").

5. *See Johnson v. Johnson*, 544 P.2d 65, 71 (Alaska 1975) (holding no due process violation where party denied opportunity to be heard on issue is later afforded opportunity to brief and argue merits through motion for reconsideration).

6. *See Brooks v. Brooks*, Mem. Op. & J. No. 0993, 2000 WL 34545824, at *2 (Alaska 2000) ("[A]ny procedural error was harmless, since our review of the merits of the superior court's written decision will cure any prejudice that [appellant] potentially suffered from flaws in the procedures that led to its entry.") (citing *Sanuita v. Common Laborer's & Hod Carriers Union of America*, 402 P.2d 199, 202–03 (Alaska 1965)).

7. Alaska R. Civ. P. 58.1(b), (c).

8. While Mullins stated at the hearing that the clerk sent her the wrong dial-in code by e-mail, it appears that the clerk mailed and phoned Mullins with the correct code.

moot because questions of the legality of the LBC's conduct and the election remain "unadjudicated." In Mullins's administrative appeal to the superior court, she alleged that the LBC made the following errors in approving the petition: (1) improperly finding that the proposed borough satisfied the regulatory requirements for incorporation; (2) excluding Slavic and Native populations from the incorporation process; (3) failing to adequately distribute informational materials to the public; and (4) violating the Open Meetings Act by using information gathered during a private tour of the proposed borough in making its decision. She also challenged the incorporation election procedures, including the use of a mail-in ballot, the proposed schedule for counting ballots, the combining of the vote on borough incorporation with the vote for borough officials in the same election, and the combining of the vote on the Pogo PILOT agreement and the vote on taxes in the same ballot question. Mullins requested that the superior court stay the election, order that the incorporation vote be conducted separately from and prior to the election of borough officials, order that the vote on the Pogo PILOT agreement and taxes be presented as separate questions, and direct the LBC to begin the incorporation process from scratch.

The superior court initially dismissed Mullins's appeal in a summary order. After Mullins filed two additional briefs with the superior court, the court issued a two-paragraph Order of Clarification stating, in its entirety:

The court was assigned to hear an appeal of the Local Boundary Commission decision. Although multiple defects in the underlying proceedings were alleged, the end result of the vote of the community

was to frustrate any effect of the Local Boundary Commission decision.

Because the court was assigned as an appeals court, it was not acting as a trial court. Any complaints about the underlying proceedings would only be considered on the question as to whether the decision should be reversed. The court would not, as an appeal court, hear new evidence or make decisions on any matter except whether to reverse or affirm the decision. Accordingly, the appeal was not the place to consider complaints, except as they would affect the appeal. Because there is no need to reverse the decision, which no longer has any effect, and is moot, the case has been dismissed. New filings will not be addressed.

■■■ We apply our independent judgment in determining whether Mullins's appeal of the LBC's approval of the petition was properly dismissed as moot.[9] A court will generally not consider questions "where events have rendered the legal issue moot."[10] A claim is moot "if it has lost its character as a present, live controversy" or "if the party bringing the action would not be entitled to any relief even if it prevails."[11]

### 1. Alleged wrongdoing by the LBC

■■■ It is clear that Mullins's complaints against the LBC were mooted by the election. Mullins appealed the LBC's decision to approve the petition, seeking to have the superior court overturn the decision based on various alleged defects in the approval process. The vote against incorporation voided the approval decision and provided the principal relief that Mullins sought in her appeal to the superior court.[12]

---

9. See Akpik v. State, Office of Mgmt. & Budget, 115 P.3d 532, 534 (Alaska 2005).

10. Kodiak Seafood Processors Ass'n v. State, 900 P.2d 1191, 1195 (Alaska 1995).

11. Ulmer v. Alaska Rest. & Beverage Ass'n, 33 P.3d 773, 776 (Alaska 2001) (quoting Gerstein v. Axtell, 960 P.2d 599, 601 (Alaska 1998)).

12. These facts can be analogized to challenges to administrative permitting decisions where the permits are no longer valid, but permit opponents still seek declaratory judgment that the

agency actions relating to the permits were unlawful. We have regularly found such appeals to be moot. See, e.g., Akpik, 115 P.3d at 534–35 (holding challenge to agency's decision not to accept comments on proposed exploratory drilling project and to approve project to be moot where project was completed and project permits had expired); State, Dep't of Natural Res. v. Greenpeace, Inc., 96 P.3d 1056, 1068 (Alaska 2004) (holding challenge to agency's decision to lift stay on issuance of permit to be moot where permit had expired); Kodiak Seafood Processors, 900 P.2d at 1196 (holding challenge to agency's

Even if claims are moot, a court may still hear them if they fall within the public interest exception to the mootness doctrine. In determining whether the public interest exception applies, a court considers: "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine."[13] "None of these factors is dispositive; each is an aspect of the question of whether the public interest dictates that a court review a moot issue."[14] The proper inquiry in this case is not only whether the LBC's challenged approval decision falls under the public interest exception, but also whether the underlying wrongful conduct alleged by Mullins does.[15]

The LBC's approval of the petition, and its allegedly arbitrary finding that the petition satisfied regulatory requirements for incorporation, do not fall under the public interest exception because it is unlikely that a similar petition will be filed with and approved by the LBC, and such approval decisions can be, and often are, the subject of legal review. First, regulations prevent the LBC from accepting a substantially similar petition for two years after such a petition is rejected by voters.[16] And as a practical matter, the LBC is highly unlikely to approve

the same petition after it was so overwhelmingly rejected by voters. If and when another petition is submitted, even tracing the same boundaries as the petition submitted in January 2006, the LBC must again review whether the petition satisfies the criteria for incorporation, a highly fact-specific inquiry.[17] It is unlikely that the allegedly erroneous findings and approval decision will be repeated. Second, citizens have the right to appeal decisions of the LBC under the Administrative Procedure Act.[18] These decisions, including the LBC's interpretation and application of regulations concerning incorporation, are regularly challenged in court and do not evade review.[19] Therefore, even accepting that they are issues of public importance, the approval of the petition by the LBC, and any errors in applying regulatory criteria for incorporation, are moot and will not be considered under the public interest exception.

Mullins's remaining complaints regarding the LBC's conduct relate to public participation: exclusion of minority groups from the incorporation process, insufficient distribution of informational documents, and reliance on a meeting closed to the public in making its decision. Such problems are arguably capable of repetition, although the facts in each instance may vary slightly.[20] Moreover, failure to adequately inform and include the public in decision-making is a

---

decision to issue exploratory permit to be moot where permit was revoked before trial, but considering merits under public interest exception).

**13.** *Ulmer,* 33 P.3d at 777–78.

**14.** *Kodiak Seafood Processors,* 900 P.2d at 1196.

**15.** In formulating the test for applying the public interest exception, we have referred to "disputed issues" rather than "claims." *See id.; see also Akpik,* 115 P.3d at 535 (noting that a court "may address *certain issues* if they fall within the public interest exception" and proceeding to analyze issues raised by appellant underlying his mooted challenge to an agency decision) (emphasis added).

**16.** 3 Alaska Administrative Code 110.650 (2009).

**17.** *See Ulmer,* 33 P.3d at 778 (indicating that proper scope of inquiry for first prong of public interest exception test in challenge to initiative petition summary language is limited to whether

*specific* language of initiative and summary is likely to be repeated).

**18.** AS 29.05.100(b).

**19.** *See, e.g., Petitioners for Incorporation of City & Borough of Yakutat v. Local Boundary Comm'n,* 900 P.2d 721 (Alaska 1995) (reviewing alteration of incorporation petition by the LBC); *Keane v. Local Boundary Comm'n,* 893 P.2d 1239 (Alaska 1995) (reviewing approval of incorporation petition by the LBC); *Lake & Peninsula Borough v. Local Boundary Comm'n,* 885 P.2d 1059 (Alaska 1994) (reviewing approval of incorporation petition by the LBC); *Valleys Borough Support Comm. v. Local Boundary Comm'n,* 863 P.2d 232 (Alaska 1993) (reviewing the LBC's decision to select one incorporation petition over another).

**20.** Indeed, the ombudsman found that the LBC has demonstrated a "pattern" of failing to adequately engage in consultation with Alaska Natives when making decisions.

matter of public importance. But complaints regarding public participation do not repeatedly evade judicial review. We analyze this prong of the public interest exception test "by comparing the time it takes to bring the appeal with the time it takes for the appeal to become moot." [21] There is no reason to believe that the time between the approval of a petition by the LBC based on inadequate public participation and the incorporation election is insufficient to permit judicial review.[22] Even when it is, public participation claims remain live and can be adjudicated where the public votes *for* incorporation. In *Lake and Peninsula Borough v. Local Boundary Commission,* for example, certain villages appealed the LBC's approval of an incorporation petition subsequently approved by voters in part on the grounds that the LBC provided inadequate notice during the incorporation process.[23] The superior court found that notice was defective, a ruling we affirmed, and the LBC was directed to remedy its notice violations.[24] We thus find that Mullins's public participation claims are moot and do not fall within the public interest exception.

Mullins specifically alleges that the LBC violated the Open Meetings Act (OMA) by using information gathered during a private tour of the proposed borough in making its decision.[25] She argues that this claim is not moot, relying on our statement in *Alaska*

*Community Colleges' Federation of Teachers, Local No. 2404 v. University of Alaska (ACCFT)* that "[t]he mootness bar is especially inappropriate in OMA cases." [26] In *ACCFT,* the plaintiff sought to void a governmental decision on the grounds that it had been reached at a private meeting.[27] At the superior court's direction, the decision-making body held a properly noticed open meeting at which it affirmed its previous decision.[28] The court then dismissed the lawsuit without ruling on whether the original meeting violated the OMA, finding that any violation had been remedied.[29] We reversed the dismissal and remanded the case to the superior court to determine whether a violation of the OMA occurred and if so, whether the subsequent meeting remedied the violation.[30]

Unlike in *ACCFT,* the LBC's approval decision was not reaffirmed at a curative meeting, and it is not still in effect. Mullins, unlike the plaintiff in *ACCFT,* cannot obtain the substantive relief she seeks because the LBC's decision allegedly made in violation of the OMA has been voided by subsequent events. Where a decision is still in effect when an OMA claim is brought, the holding in *ACCFT* requires that a court review the alleged OMA violation even if a curative meeting was held. Where a decision is no longer in effect, as is the case here, a court should conduct a standard mootness

---

**21.** *Copeland v. Ballard,* 210 P.3d 1197, 1202 (Alaska 2009).

**22.** *See Ulmer,* 33 P.3d at 778 ("Although such appeals typically must be decided by election day to avoid becoming moot, there is no reason to believe that we cannot resolve such appeals in a timely fashion. Indeed, we have frequently done that.") (internal citations omitted); *O'Callaghan v. State,* 920 P.2d 1387, 1388–89 (Alaska 1996) (holding appeal of election result moot, and declining to apply public interest exception because if issues were repeated, "a timely election challenge would be possible").

**23.** 885 P.2d 1059, 1060–61 (Alaska 1994).

**24.** *Id.* at 1062–63, 1067.

**25.** The Open Meetings Act requires "[a]ll meetings of a governmental body of a public entity of the state [to be] open to the public" with limited exceptions not applicable in this case. AS 44.62.310(a). "Meeting" is defined as "a gathering of members of a governmental body when

... a matter upon which the governmental body is empowered to act is considered by the members collectively." AS 44.62.310(h)(2). An actual decision need not be reached at the meeting for the statute to apply. *See Brookwood Area Homeowners Ass'n, Inc. v. Municipality of Anchorage,* 702 P.2d 1317, 1323 (Alaska 1985). An OMA violation may be cured by "holding another meeting in compliance with notice and other requirements of this section and conducting a substantial and public reconsideration of the matters considered at the original meeting." AS 44.62.310(f).

**26.** 677 P.2d 886, 889 (Alaska 1984).

**27.** *Id.* at 888.

**28.** *Id.*

**29.** *Id.*

**30.** *Id.* at 892–93.

analysis to determine whether to address the OMA claim. In this case, for the reasons described above, Mullins's public participation challenge to LBC's private car tour as a violation of the OMA is moot and we will not consider it.[31]

### 2. Alleged violations in the election

Mullins's initial pleading in her administrative appeal of the LBC's approval decision included allegations of wrongdoing by the Division of Elections in structuring the incorporation election. Mullins later attempted to amend her pleading to add a complaint against the Director of Elections as a defendant and request changes to the upcoming election as relief, titling her amended pleadings an "Amended Notice of Appeal & Complaint." The superior court never accepted Mullins's addition of a complaint against the Director of Elections—its final Order of Clarification continued to list the LBC as the only party adverse to Mullins and noted that Mullins's "appeal was not the place to consider complaints."

■■■■ A party may not unilaterally add a complaint against a third party to a pending administrative appeal by amending the pleadings, as Mullins attempted to do in this case. The superior court is operating under the authority of different statutory provisions when it acts as an appellate court[32] and a trial court of general jurisdiction[33] and these roles are not generally combined in the same

lawsuit.[34] The superior court, acting in its capacity as an intermediate court of appeal to review an administrative decision,[35] properly declined to review Mullins's claims against the Division of Elections regarding the incorporation election, as they were unrelated to the LBC's decision that was under review. Because the claims regarding the incorporation election were not properly before the superior court, they are not properly before us; the only claims properly before us on appeal are those relating to the LBC's decision to approve the petition.

■■■ If Mullins wished to sue the Division of Elections, she should have filed an independent lawsuit. Now that the election has passed, it is highly likely that such a lawsuit would be moot.[36] A superior court can no longer direct the Division of Elections to change the format and procedures of the incorporation election, as requested by Mullins in her improper amended pleadings. Nor does Mullins seek to void the results of the election. The only relief available to Mullins for alleged errors in the election would be a declaratory judgment—there are no live issues. Moreover, these alleged errors are unlikely to evade judicial review. There is no reason to assume that courts cannot decide challenges related to an election before election day.[37] Even where final judgment is not rendered prior to the election, election procedures can still be challenged by anyone opposing the outcome.[38]

31. Mullins also appeals the superior court's denial of her motion for a preliminary injunction staying the election. But the preliminary injunction motion was based on the alleged wrongdoing of the LBC, and these claims are moot for the reasons discussed above.

32. See AS 22.10.020(d).

33. See AS 22.10.020(a).

34. It may in some instances be appropriate for a superior court to consolidate a *separately* filed administrative appeal and lawsuit concerning the same set of facts.

35. See Alaska R.App. P. 601–612 (establishing rules for superior court acting as an intermediate appellate court).

36. See, e.g., *Peloza v. Freas*, 871 P.2d 687, 688 (Alaska 1994) (holding pre-election challenge to refusal to place candidate on ballot to be mooted

by election); *Falke v. State*, 717 P.2d 369, 371 (Alaska 1986) (holding pre-election action seeking to remove candidate from ballot in which candidate lost); *see also Grady v. State*, Mem. Op. & J. No. 1110, 2002 WL 31529075, at *1 (Alaska Nov. 13, 2002) (holding pre-election action seeking ruling that candidate forfeited nomination to be mooted by election in which candidate lost).

37. *See supra* note 22.

38. *See* AS 15.20.540 (establishing election challenge procedures whereby ten qualified voters can challenge the approval or rejection of any question or proposition on the grounds of "malconduct, fraud, or corruption on the part of an election official" or "any corrupt practices as defined by law sufficient to change the results of the election.").

In this case, Mullins does not oppose the election results and her challenges to the incorporation election, even if filed as an independent lawsuit, would almost certainly be moot.[39]

## V. CONCLUSION

The superior court correctly dismissed Mullins's administrative appeal as moot. For the reasons detailed above, we AFFIRM.

EASTAUGH, Justice, not participating.

---

**39.** Mullins also challenges the constitutionality of the Pogo PILOT agreement that was placed on the ballot. We have established a "general rule . . . that a court should not determine the constitutionality of an initiative unless and until it is enacted." *State v. Trust the People*, 113 P.3d 613, 614 n. 1 (Alaska 2005); *see also Kodiak Island Borough v. Mahoney*, 71 P.3d 896, 898 (Alaska 2003) ("Courts will not review the constitutionality of the substantive initiative proposal until and unless the voters pass the ordinance."); *Brooks v. Wright*, 971 P.2d 1025, 1027 (Alaska 1999) ("[g]eneral contentions that the provisions of an initiative are unconstitutional are justiciable only after the initiative has been enacted by the electorate" (quoting *Boucher v. Engstrom*, 528 P.2d 456, 460 n. 13 (Alaska 1974))). Pursuant to this rule, a court should not review the constitutionality of the defeated Pogo PILOT agreement even if raised in an independent lawsuit.