*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DANIEL S. SULLIVAN, COMMISSIONER, STATE OF ALASKA, DEPARTMENT OF NATURAL RESOURCES, | ) ) ) ) | Supreme Court No. S-14216 |
| | ) | Superior Court No. 3AN-10-04217 CI |
| | ) | |
| Petitioner, | ) | O P I N I O N |
| | ) | |
| v. | ) | No. 6769 – March 29, 2013 |
| | ) | |
| RESISTING ENVIRONMENTAL, DESTRUCTION ON INDIGENOUS LANDS (REDOIL), GWICH'IN STEERING COMMITTEE, ALASKA WILDERNESS LEAGUE, CENTER FOR BIOLOGICAL DIVERSITY, and NORTHERN ALASKA ENVIRONMENTAL CENTER, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Respondents. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter G. Ashman, Judge pro tem.

Appearances: Joanne M. Grace and Rebecca Kruse, Assistant Attorneys General, Anchorage, and John J. Burns, Attorney General, Juneau, for Petitioner. Brook Brisson and Victoria Clark, Trustees for Alaska, Anchorage, for Respondents. James E. Torgerson and John R. Evans, Stoel Rives LLP, Anchorage, for Amicus Curiae ConocoPhillips Alaska, Inc.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

STOWERS, Justice.

## I. INTRODUCTION

The State of Alaska Department of Natural Resources, Oil and Gas Division (DNR), petitioned for review of the superior court's decision that under AS 38.05.035, the lack of continuing best interest findings (BIF) at each phase of an oil and gas project violated article VIII of the Alaska Constitution and that DNR must issue a written best interest finding at each step of a phased project to satisfy the constitution. Because best interest findings after the lease sale phase are not required under the Alaska Constitution or AS 38.05.035, we reverse the superior court's ruling. We also hold that the State is constitutionally required to consider the cumulative impacts of an oil and gas project at its later phases.

## II. FACTS & PROCEEDINGS

### A. Background

The Beaufort Sea Lease Sale Area comprises two million acres of state-owned tidal and submerged lands which extend three miles seaward from the coast between Point Barrow and Canada. The Beaufort Sea Lease Sale Area is believed to contain significant oil and gas resources. This area also contains many habitats, including tundra, freshwater lakes, streams and wetlands, estuaries, lagoons, and marine habitats, all of which support a variety of fish and wildlife species. Communities on the Arctic Coast Plain, including Barrow, Nuiqsut, and Kaktovik, practice a subsistence-based lifestyle, which includes whaling and marine mammal harvests from the Beaufort Sea lease area. DNR decided to offer the Beaufort Sea area for lease sales for oil and gas exploration, development, and production.

**B.      Administrative Proceedings For The Beaufort Sea Lease Sale Area**

Before selling leases in the Beaufort Sea Lease Sale Area, DNR issued a Preliminary Best Interest Finding (Preliminary BIF) on April 2, 2009, determining that annual Beaufort Sea area-wide oil and gas lease sales from 2009-2018 were in the best interest of the state. After the Preliminary BIF was issued, DNR opened a notice and comment period of 30 days during which interested parties could comment about the finding. Resisting Environmental Destruction on Indigenous Lands, Gwich'in Steering Committee, Alaska Wilderness League, Center for Biological Diversity, and Northern Alaska Environmental Center (collectively REDOIL) submitted comments to DNR on June 1, 2009, stating that the "analytical approach DNR has taken" to examine only in general terms the potential effects that may occur during later phases was inconsistent with the Alaska Constitution.

DNR issued the Final Finding of the Director (Final BIF) for the lease sale on November 9, 2009, which stated:

> After weighing the facts and issues known to him at this time, considering applicable laws and regulations, and balancing the potential positive and negative effects given the mitigation measures and other regulatory protections, the director has concluded that the potential benefits of lease sales outweigh the possible negative effects, and that Beaufort Sea Areawide oil and gas lease sales will be in the best interests of the state of Alaska.

DNR used a phased review approach, which "recognizes that some disposals of oil and gas, or of gas only, may result in future development that cannot be predicted or planned with any certainty or specificity at the initial lease sale phase, and that any future development will be subject to detailed review before it takes place." Accordingly, DNR made clear that the analysis in the Final BIF "focus[es] only on the issues pertaining to the lease sale phase," while discussing future phases of exploration, development,

production, and transportation "in general terms." In response to concerns about the sufficiency of review under the phased approach, DNR stated, "[T]he statutory criteria for phasing have been met for the Beaufort Sea oil and gas lease sales. The constitutionality of phasing is beyond the scope of a best interest finding. A best interest process for post-lease phases is not required by statute."

REDOIL filed a request for reconsideration of the best interest finding to then-DNR Commissioner Thomas Irwin on November 30, 2009. REDOIL argued that DNR had "violated Article VIII of the Alaska Constitution by failing to fully analyze the direct, indirect and cumulative impacts of oil and gas exploration, development, production and transportation activities."

The Commissioner denied REDOIL's request for reconsideration on December 9, 2009. The Commissioner explained that DNR had complied with AS 38.05.035 and that the "constitutionality of a statute is beyond the scope of a best interest finding." He also described the unknowns associated with later phases:

> At this lease sale phase (the disposal phase), it is unknown whether any leases will be sold, let alone which tracts. Nor is it known whether exploration, development, production, or transportation will be proposed, and if it is, the specific location, type, size, extent, and duration of any proposal. In addition, methods to explore for, develop, produce, and transport petroleum resources will vary depending on the area, lessee, operator, and discovery. Speculation about possible future effects subject to future permitting that cannot be reasonably determined until the project or proposed use is more specifically defined is not required. AS 38.05.035(h). . . . Speculation about future phases and permitting, and whether or not they will violate the constitution, is beyond the scope of a best interest finding and DNR's statutory obligations.

## C.    Superior Court Proceedings

REDOIL appealed the Commissioner's decision to the superior court. Superior Court Judge pro tem Peter G. Ashman heard oral argument. The issue on appeal was "whether, as applied to the facts of this case, a 2001 amendment to AS 38.05.035(e) authorizing the director to prepare a single written BIF violates the provisions of Article VIII of the Alaska Constitution."

To provide context to the superior court's decision, in 2000, in *Kachemak Bay Conservation Society v. State, Department of Natural Resources,* we stated:

> Within the strictures specified by the legislature, phasing is now expressly allowed. It is not for us to overturn that policy choice.
>
> We note, however, that the legislature's policy choice does not, by any means, relieve DNR of its duty to take a continuing "hard look" at future development on the lease sale lands. To the contrary, DNR is obliged, at *each phase* of development, to issue a best interests finding and a conclusive consistency determination relating to *that* phase before the proposed development may proceed.[1]

In 2001, in response to our decision in *Kachemak Bay*, the legislature amended AS 38.05.035(e) by inserting the sentence: "In approving a contract under this subsection, the director need only prepare a single written finding."[2] Based on the language in *Kachemak Bay*, REDOIL argued before the superior court that DNR had a constitutional duty to ensure that leases are in the public's best interest, and therefore DNR was constitutionally required to make a best interest finding at each phase of the process. DNR argued that our discussion regarding best interest findings in *Kachemak Bay* was either incorrect dicta or an interpretation of a statute, not the

---

[1]    6 P.3d 270, 294 (Alaska 2000) (emphasis in original).

[2]    Ch. 101, § 2, SLA 2001.

Alaska Constitution, and the legislature sought to clarify this misunderstanding by amending AS 38.05.035(e). DNR argued that it complied with the requirements of the amended statute and that the amended procedure for approving the lease sales was a statutory action within the discretion of the legislature; DNR denied that Alaska's constitution required best interest findings at each phase of a lease sale.

On February 22, 2011, the superior court issued an order concluding:

> The Alaska Constitution and the Supreme Court's decisions reflect a strong policy of protecting the public interest where public land grants are concerned. The statute requires a written BIF. The courts infer from Article VIII a duty of continuing evaluation. The conclusion of *Kachemak Bay* that BIFs are required at every phase is grounded in the constitutional principle of that continuing duty. As such, application of statutory permission to issue only a single BIF at the initial phase of a development where it is impossible to assess the cumulative effects of the development as they relate to DNR's continuing obligation to consider the public's best interest violates Article VIII of the Alaska Constitution.

(Internal citations omitted.) The superior court reasoned that the language from *Kachemak Bay*

> distinguishes between the phasing procedure, which the Court describes as a policy choice, and what the Court characterizes as DNR's "obligation" to scrutinize each phase for the best interest of the public. This distinction suggests that *while phasing may be a function of legislative policy, the duty to scrutinize each phase, which itself arises from the duty to consider cumulative effects, springs from a higher principle which supersedes agency policy. Implicit in its finding that phasing is constitutional is the Court's confidence that the statutory duty to issue findings at each phase insured that DNR would fulfill its constitutional duties.*

(Emphasis added.)

The superior court concluded that DNR's interpretation of the law as

requiring only a single best interest finding "plainly conflicts with DNR's ongoing constitutional obligations. . . . The application of the statute can only be reconciled with DNR's constitutional duties by requiring a written BIF at each phase of a project."

The superior court reversed and remanded the Commissioner's final decision denying reconsideration of DNR's Final BIF with instructions to "revise the decision . . . to require a written best interests finding at each phase of the subject proposal." Commissioner Daniel S. Sullivan, who had succeeded Commissioner Irwin, filed a petition for review on March 18, 2011, which we granted. On August 31, 2011, in response to the superior court's order, the Commissioner issued a Reconsideration Decision on Remand which stated, "I hereby affirm the Beaufort Final Finding. For leases sold under the Beaufort Final Finding, DNR will issue a written best interest finding at each phase of the subject project." We took judicial notice of this Reconsideration Decision on Remand on October 17, 2011.

III. **STANDARD OF REVIEW**

"When a superior court acts as an intermediate court of appeal in an administrative matter, we independently review the merits of the agency's decision."[3] We review questions of constitutional law de novo, applying our "independent judgment."[4] "In construing a constitutional provision, we must give it a 'reasonable and practical interpretation in accordance with common sense' and consonant with 'the plain meaning and purpose of the provision and the intent of the framers.' "[5] We also apply

---

[3]    *Kuzmin v. State, Commercial Fisheries Entry Comm'n*, 223 P.3d 86, 88 (Alaska 2009).

[4]    *Brooks v. Wright*, 971 P.2d 1025, 1027 (Alaska 1999).

[5]    *Legislative Council v. Knowles*, 988 P.2d 604, 607 n.11 (Alaska 1999) (quoting *ARCO Alaska, Inc. v. State*, 824 P.2d 708, 710 (Alaska 1992)).

our independent judgment when interpreting statutes.[6] This is not a case where agency interpretation is implicated.

## IV. DISCUSSION

### A. Article VIII Of The Alaska Constitution Does Not Require Written Best Interest Findings.

Article VIII of the Alaska Constitution addresses Alaska's natural resources. Section 1 provides: "It is the policy of the State to encourage the settlement of its land and the development of its resources by making them available for maximum use consistent with the public interest."[7] In 1959 the Alaska legislature passed the Alaska Land Act. The preamble of this statute reiterates almost verbatim article VIII, section 1 of the Alaska Constitution.[8] Alaska Statute 38.05.035, the statute at issue in this case, is part of the Alaska Land Act.[9] The statute outlines DNR's duty to provide a written finding that the best interest of the State will be served by lease sales.[10] We have stated that "DNR's obligation to consider the 'best interests of the state' and to issue written findings when it proposes to alienate state land or an interest in state land can be traced to the Alaska Constitution."[11]

---

[6]     *Cook Inlet Keeper v. State*, 46 P.3d 957, 961 (Alaska 2002).

[7]     Alaska Const. art. VIII, § 1.

[8]     "It is the policy of Alaska to encourage the settlement of its land and the development of its resources by making them available for maximum use consistent with the public interest." Preamble of Alaska Land Act, ch. 169, SLA 1959.

[9]     AS 38.05.005-.990.

[10]     AS 38.05.035(e).

[11]     *Kachemak Bay Conservation Soc. v. State, Dep't of Natural Res.*, 6 P.3d 270, 276 (Alaska 2000); *see also* ALASKA DEP'T OF NATURAL RES., BEAUFORT SEA (continued...)

As currently written, AS 38.05.035(e) states in part:

> Upon a written finding that the interests of the state will be best served, the director may, with the consent of the commissioner, approve contracts for the sale, lease, or other disposal of available land, resources, property, or interests in them. *In approving a contract under this subsection, the director need only prepare a single written finding.*

(Emphasis added.) The preparation and issuance of the director's written finding are subject to certain conditions including, under AS 38.05.035(e)(1)(B), that the director

> may limit the scope of an administrative review and finding for a proposed disposal to
>
> > (i) applicable statutes and regulations;
> >
> > (ii) the facts pertaining to the land, resources, or property, or interest in them, that the director finds are material to the determination and that are known to the director or knowledge of which is made available to the director during the administrative review; and
> >
> > (iii) issues that, based on the statutes and regulations referred to in (i) of this subparagraph, on the facts as described in (ii) of this subparagraph, and on the nature of the uses sought to be authorized by the disposal, the director finds are material to the determination

---

[11](...continued)
AREAWIDE OIL AND GAS LEASE SALE: FINAL FINDING OF THE DIRECTOR, at 2-1 (Nov. 9, 2009) ("The Alaska Constitution provides that the state's policy is 'to encourage . . . the development of its resources by making them available for maximum use consistent with the public interest' and that the 'legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State . . . for the maximum benefit of its people.' . . . To comply with this provision, the legislature enacted Title 38 of the Alaska Statutes and directed ADNR to implement the statutes.").

of whether the proposed disposal will best serve the interests of the state . . . .

Under AS 38.05.035(e)(1)(C), if the proposed project is for a multiphased development, the director, in the written finding

> may . . . limit the scope of an administrative review and finding for the proposed disposal to the applicable statutes and regulations, facts, and issues identified in (B)(i)-(iii) of this paragraph that pertain solely to the disposal phase of the project when
>
>> (i) the only uses to be authorized by the proposed disposal are part of that phase;
>>
>> (ii) the disposal is a disposal of oil and gas, or of gas only, and, before the next phase of the project may proceed, public notice and the opportunity to comment are provided under regulations adopted by the department;
>>
>> (iii) the department's approval is required before the next phase of the project may proceed; and
>>
>> (iv) the department describes its reasons for a decision to phase . . . .

A written finding for an oil and gas lease sale is subject to AS 38.05.035(g) and includes consideration of "the reasonably foreseeable cumulative effects of exploration, development, production, and transportation for oil and gas or for gas only on the sale area, including effects on subsistence uses, fish and wildlife habitat and populations and their uses, and historic and cultural resources."

We have a long history of interpreting AS 38.05.035 since its enactment, and the legislature has responded to some of our holdings by amending the statute. In 1976, in *Moore v. State*, we held that a formal written best interest finding was not

required under the statute.[12] That same year the legislature amended the statute to require a written finding.[13] Ten years later, in *Alaska Survival v. State, Department of Natural Resources*, we held that despite new information, an amended best interest finding was not required under the statute.[14] The following year the legislature added a supplemental best interest finding provision to the statute.[15]

In 1994, in response to a series of decisions by this court regarding DNR's phasing of review for mining and oil and gas projects, the legislature amended AS 38.05.035 to allow for phasing in the approval of projects.[16] " 'Phasing' consists of DNR's dividing a proposal into discrete parts — e.g., exploration, construction of facilities, and production — and examining each of these parts individually for

---

[12]     553 P.2d 8, 35-36 (Alaska 1976) ("The legislative procedural directive of AS 38.05.035(a)(14) requires of the Director an independent, reasoned evaluation of a proposed sale. Although he is not expressly obligated to make a formal written finding, he must at a minimum establish a record which reflects the basis for his decision.").

[13]     Ch. 257, § 3, SLA 1976.

[14]     723 P.2d 1281, 1287 (Alaska 1986) ("There is no explicit statutory requirement for an amended [best interest] finding and/or additional public comment upon the discovery of new information.").

[15]     Ch. 75, § 10, SLA 1987.

[16]     Ch. 38, § 2, SLA 1994. In *Kuitsarak Corp. v. Swope*, 870 P.2d 387, 395-96, 398 (Alaska 1994), we held that DNR improperly failed to consider the effects of mining, including cumulative effects, prior to granting offshore prospecting permits, and in *Trustees for Alaska v. State, Dep't of Natural Res.*, 795 P.2d 805, 812 (Alaska 1990), we held that "DNR's Final Finding is deficient in that it did not review the environmental problems associated with oil transportation from the sale area, assuming no change in the status of ANWR." We explained in *Kachemak Bay*, 6 P.3d at 276-77 & n.13 (Alaska 2000), that the legislature's 1994 amendment responded to these two earlier decisions.

compliance rather than examining the project as a whole."[17]  Legislative Finding 11 of the 1994 amendment states:

> The legislature finds that . . . consideration of a disposal as a phase of a development project is not intended to artificially divide or segment a proposed development project to avoid thorough review of the project or to avoid consideration of potential future environmental, sociological, or economic effects, but rather is intended to allow for consideration of those issues when sufficient data are available upon which to make reasoned decisions.[18]

We did not have occasion to address the 1994 amendments to AS 38.05.035 until 2000 in *Kachemak Bay*.[19]  In that case, we examined how the 1994 amendments affected our line of cases on phasing, which culminated in *Thane Neighborhood Association v. City and Borough of Juneau* in 1996.[20]  In *Thane*, we summarized three "general, guiding principles" about the permissibility of phasing projects:

> First, unless a specific statute or regulation allows phasing, phasing is disfavored.  Where a statute is silent or ambiguous, phasing should generally not be allowed.
>
> Second, phasing is prohibited if it can result in disregard of the cumulative potential environmental impacts of a project. The more interlinked the components of a project are and the

---

[17]    *Kachemak Bay*, 6 P.3d at 274 n.1.

[18]    Ch. 38, § 1, SLA 1994.

[19]    6 P.3d at 277.

[20]    *Id.* at 277-78 (citing *Thane Neighborhood Ass'n v. City & Borough of Juneau*, 922 P.2d 901 (Alaska 1996)) ("It is clear that by enacting the amendment the legislature was seeking to allow DNR to phase its approval of projects.  However, the legislature did not explicitly overrule any of the cases mentioned above.  Thus, we must discern to what extent, if at all, the principles we enunciated in *Thane* and its predecessors survived the 1994 amendment.").

greater the danger that phasing will lead to insufficient consideration of cumulative impacts, the greater the need to bar phasing.

Third, conditions and stipulations may be used to address unforeseen occurrences or unforeseen situations that may arise during exploration or development, but permit conditions may not serve as a substitute for an initial pre-permitting analysis that can be conducted with reasonably obtainable information.[21]

We determined in *Kachemak Bay* that the first and third *Thane* principles "did not survive the 1994 amendment."[22] Addressing the first principle, we stated that, because the amended statute expressly allowed DNR to review projects in phases, "it cannot be said that phasing is 'disfavored' under Alaska law; on the contrary, the amendment affirmatively empowered DNR to phase its best interests findings if it meets the criteria."[23] We also noted, "The 1994 amendment seems to have severely limited, if not nullified, [the third] principle."[24] We concluded, however, that *Thane*'s second principle regarding cumulative impacts "appears to have survived and, indeed, to have been reaffirmed by the 1994 amendment."[25] We then addressed the appellant's concern that phasing should not be allowed because once the State has conducted a lease sale, it might be "unwilling to cancel the leases, no matter how dire the environmental

---

[21] *Thane*, 922 P.2d at 908 (internal citations omitted).

[22] *Kachemak Bay*, 6 P.3d at 278.

[23] *Id.*

[24] *Id.*

[25] *Id.*

-13-                                                                 6769

consequences, because of the financial burden of doing so."[26] We stated:

> Within the strictures specified by the legislature, phasing is now expressly allowed. It is not for us to overturn that policy choice.
>
> We note, however, that the legislature's policy choice does not, by any means, relieve DNR of its duty to take a continuing "hard look" at future development on the lease sale lands. *To the contrary, DNR is obliged, at each phase of development, to issue a best interests finding . . . relating to that phase before the proposed development may proceed.*[27]

(Emphasis added.)

In 2001 the legislature responded directly to our ruling in *Kachemak Bay* by amending AS 38.05.035(e) to explicitly provide that best interest findings at each phase of development were not required.[28] The amended statute requires only a single best interest finding in the lease sale phase (also known as the disposal phase). The legislature explained its purpose for amending the statute in detail:

> (b)     The [1994] amendment to AS 38.05.035(e) provided that, in preparing its best interest finding, the Department of Natural Resources may limit the scope of its review and finding to the disposal phase of a multiphase project if certain conditions were met.
>
> (c)     Although the legislature did intend that there would be a detailed review of the project at any later phase, the legislature did not intend that the Department of Natural Resources would have to issue another best interest finding as part of that review.
>
> (d)     When passing the 1994 amendments, the legislature

---

[26]     *Id*. at 293.

[27]     *Id*. at 294.

[28]     Ch. 101, § 2, SLA 2001.

was aware that the post-disposal phases, which are exploration, development, and transportation, would be subjected to numerous federal, state, and local laws, regulations, policies, and ordinances; reviewed by numerous agencies; and subjected to public review and comment. . . .

(e) In Kachemak Bay Conservation Society v. State, Department of Natural Resources, . . . the Alaska Supreme Court considered the 1994 amendment . . . but declared that the department "is obliged, at each phase of development, to issue a best interests finding . . . relating to that phase before the proposed development may proceed."

(f) This Act is intended to make clear that

(1) no other best interest finding is required after the disposal phase;

(2) the best interest finding shall be based upon known information or information that is made available to the director even if all potential cumulative impacts of the project are not known; and

(3) public notice and the opportunity to comment shall be provided at each phase of the project.[29]

The legislature amended AS 38.05.035(e) by inserting the sentence: "In approving a contract under this subsection, *the director need only prepare a single written finding*."[30] The legislature also amended a provision that had previously stated that if the proposed project was for a multiphased development, the director, in the written finding,

may . . . limit the scope of an administrative review and finding for the proposed disposal . . . when . . . the

---

[29]  Ch. 101, § 1, SLA 2001.

[30]  Ch. 101, § 2, SLA 2001 (emphasis added).

department describes its reasons for a decision to phase *and conditions its approval to ensure that any additional uses or activities proposed for that or any later phase of the project will serve the best interests of the state.*[31]

The legislature removed the phrase "and conditions its approval to ensure that any additional uses or activities proposed for that or any later phase of the project will serve the best interests of the state."[32]

In this case, DNR complied with the best interest finding requirement in AS 38.05.035(e) as amended in 2001. DNR asserts that the superior court erred when it concluded that the "application of statutory permission to issue only a single [best interest finding] at the initial phase of a development . . . violates Article VIII of the Alaska Constitution." DNR argues that article VIII of the Alaska Constitution does not require a best interest finding. We agree with DNR.

Article VIII, section 2 of the Alaska Constitution gives the legislature the responsibility and discretion to create procedures to meet the policy outlined in article VIII, section 1 to develop Alaska's resources "for the maximum benefit of [the State's] people."[33] The legislature created the best interest finding outlined in AS 38.05.035 to provide DNR with a procedure the agency must follow to ensure that Alaska's resources are developed for the maximum benefit of the people.

---

[31]     Ch. 38, § 2, SLA 1994 (emphasis added).

[32]     Ch. 101, § 2, SLA 2001.

[33]     Article VIII, section 2 of the Alaska Constitution states: "The legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State, including land and waters, for the maximum benefit of its people." Section 1 provides: "It is the policy of the State to encourage the settlement of its land and the development of its resources by making them available for maximum use consistent with the public interest."

It is clear from our case law that the best interest finding requirement created in AS 38.05.035 is purely a creature of the legislature. What has been required in a best interest finding has changed over the years based on our interpretations of the statute and the legislature's responses to those interpretations. It is within the discretion of the legislature to modify AS 38.05.035 so long as the principles contained in article VIII of the Alaska Constitution are being met. Requiring only a single best interest finding, a procedure that was created by the legislature and not the constitution, does not contravene article VIII. Our holding in *Kachemak Bay* that "DNR is obliged, at *each phase* of development, to issue a best interests finding . . . relating to *that* phase before the proposed development may proceed"[34] did not survive the 2001 legislative amendment to AS 38.05.035.

B. **Subsequent Phases Of An Oil And Gas Development Project Are Not "Disposals" Under AS 38.05.035(e).**

Alaska Statute 38.05.035(e) states:

Upon a written finding that the interests of the state will be best served, the director may, with the consent of the commissioner, *approve contracts for the sale, lease, or other disposal* of available land, resources, property, or interests in them. In approving a contract under this subsection, the director need only prepare a single written finding.

(Emphasis added.) The superior court stated, "The [1994] Legislative Findings explicitly refer to 'disposal as a phase of a development project' and the Court's reasoning [in *Kachemak Bay*] demonstrates its assumption that each phase is to be treated as a distinct disposal of an interest in state lands." The superior court concluded that "each phase of a project is a distinct disposal of an interest in state land" and, therefore, "the application

---

[34] *Kachemak Bay Conservation Soc. v. State, Dep't of Natural Res.*, 6 P.3d 270, 294 (Alaska 2000) (emphasis in original).

of [AS 38.05.035] can only be reconciled with DNR's constitutional duties by requiring a written [best interest finding] at each phase of a project." This was error. Subsequent phases of an oil and gas development project are not "disposals" under AS 38.05.035(e).

REDOIL argues that later phases involving the issuance of additional permits are "disposals" under AS 38.05.035(e) because subsequent permits that grant additional rights to lessees alienate state lands or interests in state lands. REDOIL argues that the statute expressly requires a best interest finding for these additional "disposals."

We disagree. In *Kachemak Bay* we defined a "disposal" as a "catch-all term for all alienations of state land and interests in state land."[35] Further, in *Northern Alaska Environmental Center v. State, Department of Natural Resources*, we held that a "disposal" was a "conveyance" of a property right.[36] For an oil and gas development project, the lease is the only conveyance of property rights that DNR approves. As the sample lease in the Beaufort Final Written Finding demonstrates, a state oil and gas lease conveys "the exclusive right to drill for, extract, remove, clean, process, and dispose of oil, gas, and associated substances in or under the . . . land."[37] A lessee may not necessarily be allowed to exercise all of these rights without further permits from DNR or other agencies, but the lessee has these property rights upon entering into the lease. There are no additional property rights to be conveyed at the later phases.

The 2001 amendments make clear that the legislature intended the best interest finding to apply only to the "disposal" phase, meaning the lease sale phase, of

---

[35]    *Id.* at 278 n.21.

[36]    2 P.3d 629, 635-36 (Alaska 2000).

[37]    ALASKA DEP'T OF NATURAL RES., BEAUFORT SEA AREAWIDE OIL AND GAS LEASE SALE: FINAL FINDING OF THE DIRECTOR, at D-1 (Nov. 9, 2009).

a project.[38]   The legislature defined "the post-disposal phases" as "exploration, development, and transportation."[39]  The legislature acted within its discretion to clarify in the 2001 amendments that "disposal" for the purposes of AS 38.05.035(e) meant the lease sale phase.[40]

C.     **The State Is Constitutionally Required To Consider Cumulative Impacts At Later Phases Of An Oil And Gas Project.**

Integral to the superior court's analysis was its determination that DNR was obligated to continually examine the cumulative impacts of a project throughout the project's phases:

> [A]pplication of statutory permission to issue only a single BIF at the initial phase of a development where it is impossible to assess the cumulative effects of the development as they relate to DNR's continuing obligation to

---

[38]   Ch. 101, § 1(b), SLA 2001 ("The [1994] amendment to AS 38.05.035(e) provided that, in preparing its best interest finding, the Department of Natural Resources may limit the scope of its review and finding to the disposal phase of a multiphase project if certain conditions were met.").

[39]   Ch. 101, § 1(d), SLA 2001 ("When passing the 1994 amendments, the legislature was aware that the post-disposal phases, which are exploration, development, and transportation, would be subjected to numerous federal, state, and local laws, regulations, policies, and ordinances; reviewed by numerous agencies; and subjected to public review and comment.").

[40]   REDOIL also argues that permits issued in subsequent phases of a project are "contracts" within the meaning of AS 38.05.035(e) and, therefore, additional written best interest findings must be prepared at these subsequent permitting stages. However, the subsequent permits DNR may issue are not "contracts" that would trigger a best interest finding under AS 38.05.035(e). "[A] permit is merely a privilege to do what would otherwise be unlawful, and is not a contract between the authority, federal, state, or municipal, granting it and the person to whom it is granted." *Mount Juneau Enter., Inc. v. City & Borough of Juneau*, 923 P.2d 768, 777 n.9 (Alaska 1996) (quoting *Rehmann v. City of Des Moines*, 215 N.W. 957, 960 (Iowa 1927)).

consider the public's best interest violates Article VIII of the Alaska Constitution.

Although the superior court's conclusion that the constitution requires a best interest finding at each phase of a project is erroneous, we examine whether the constitution requires the State to consider the cumulative impacts of a project at later phases.[41] This is because the underlying rationale of the superior court's decision was that

> while phasing may be a function of legislative policy, the duty to scrutinize each phase, which itself arises from the duty to consider cumulative effects, springs from a higher principle which supersedes agency policy. Implicit in its finding that phasing is constitutional is the Court's confidence that the statutory duty to issue findings at each phase insured that DNR would fulfill its constitutional duties.

DNR argues, citing *Greenpeace, Inc. v. State, Office of Management and Budget, Division of Governmental Coordination and Alaska Coastal Policy*,[42] that we have previously held that a review of cumulative impacts is only a statutory requirement rather than a constitutional one. REDOIL argues the Alaska Constitution requires cumulative impacts of a project to be considered, even after the lease sale stage. DNR's interpretation of our prior case law is incorrect. We hold that consideration of cumulative impacts is constitutionally required throughout all the phases of a project.

Article VIII, section 1 of the Alaska Constitution states: "It is the policy

---

[41] DNR and REDOIL agree that this issue is ripe for review even though the Beaufort Sea Lease Sale Area project has not entered the exploration, development, or production phases. DNR stated at oral argument that the uncertainty created by the superior court's decision may mean that the State will be affected by lessees changing their investment strategies in light of that decision. REDOIL argued that there is no opportunity for public participation at later phases so the lease sale phase is the last opportunity for the public to participate meaningfully in DNR's decision making. Thus, we decide this issue at this time.

[42] 79 P.3d 591, 594 (Alaska 2003).

of the State to encourage the settlement of its land and the development of its resources by making them available for maximum use consistent with the public interest." Section 2 states, "The legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State, including land and waters, for the maximum benefit of its people." The legislature is tasked with the duty to determine the procedures necessary for ensuring that the State's resources are used "for the maximum benefit of its people."[43] It is not the court's place to provide instruction on *how* the State should determine what action would be for the maximum benefit of the Alaskan people.

We are, however, tasked with the duty to ensure that constitutional principles are followed. A bedrock principle in Article VIII of the Alaska Constitution mandates that the State's natural resources are to be made "available for maximum use consistent with the public interest."[44] The constitution entrusts the legislature with the discretion to determine how to ensure that use of these natural resources are "for the maximum benefit of its people."[45] We have said that to ensure these principles are followed, it is necessary for the State to take a "hard look" at all factors material and relevant to the public interest: this "hard look" necessarily includes considering the cumulative impacts of a project.[46] DNR's position that it is not required to make

_____

[43] Alaska Const. art. VIII, § 2.

[44] Alaska Const. art. VIII, § 1.

[45] Alaska Const. art. VIII, §§ 1-2.

[46] *See Kachemak Bay Conservation Soc. v. State, Dep't of Natural Res.*, 6 P.3d 270, 294 (Alaska 2000) (holding that even though the legislature was entitled to make the "policy choice" to expressly allow phasing, this "does not by any means, relieve DNR of its duty to take a continuing 'hard look' at future development on the
(continued...)

cumulative impact assessments after the lease sale violates its constitutional duty to take a "continuing 'hard look' at future development" throughout the course of a project.[47]

We have noted in prior cases that "the mere decision to lease does not in itself bring about great risks to the environment" because "the lease is no more than an interest in land, and does not in itself authorize any actual 'use' of the land."[48]  Here, DNR made clear that at the lease sale phase, future impacts were unknown:

At this lease sale phase (the disposal phase), it is unknown

---

**[46]**(...continued)
lease sale lands").

The "hard look" doctrine for reviewing DNR's decisions first appeared in *Hammond v. North Slope Borough*, when we referenced a United States Supreme Court statement that the "court cannot substitute its judgment as to environmental consequences, but should only ensure that the agency has taken a 'hard look.' " 645 P.2d 750, 759 (Alaska 1982) (citing *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21 (1976)). A year later, in *Southeast Alaska Conservation Council, Inc. v. State*, we stated that our role is to

> ensure that the agency "has given reasoned discretion to all the material facts and issues."  The court exercises this aspect of its supervisory role with particular vigilance if it "becomes aware, especially from a combination of danger signals, that the agency has not really taken a '*hard look*' at the salient problems and has not genuinely engaged in reasoned decision making."

665 P.2d 544, 549 (Alaska 1983) (quoting Harold Leventhal, *Environmental Decision Making and the Role of the Courts*, 122 U. PA. L. REV. 509, 511 (1974)) (emphasis in original, footnotes omitted).  Since then, we have used the "hard look" standard when reviewing agency decisions on resource uses.  *See Kachemak Bay*, 6 P.3d at 275 ("[O]ur duty is to ensure that DNR has taken a hard look at the salient problems and has genuinely engaged in reasoned decision making." (internal quotation marks omitted)).

**[47]**    *Kachemak Bay*, 6 P.3d at 294.

**[48]**    *See id.* at 279 (quoting *Hammond*, 645 P.2d at 759).

whether any leases will be sold, let alone which tracts. Nor is it known whether exploration, development, production, or transportation will be proposed, and if it is, the specific location, type, size, extent, and duration of any proposal. In addition, methods to explore for, develop, produce, and transport petroleum resources will vary depending on the area, lessee, operator, and discovery. Speculation about possible future effects subject to future permitting that cannot be reasonably determined until the project or proposed use is more specifically defined is not required.

We agree with DNR that it would be unreasonable to speculate about possible future effects of the project before more information about the project is known. But this does not mean that these effects, once known, are not to be considered. At the lease sale phase, DNR cannot assess and make a meaningful final determination whether the maximum benefit of the people of Alaska will be achieved throughout the course of the project because many of the potential impacts of the project are not known. Therefore, these potential impacts must be considered by DNR in the future, at each subsequent phase, as more information becomes known, and particularly as DNR decides whether to issue permits for future activities. If DNR failed to consider cumulative impacts and provide to the public timely and meaningful notice of its assessment of the cumulative impacts of an oil and gas project as the project evolved through its phases, DNR would violate its constitutional duty to take a continuing hard look at new information and changing circumstances — a duty required to ensure that the State is developing its resources "by making them available for maximum use consistent with the public interest."[49]

When enacting the 2001 amendments to AS 38.05.035, the legislature stated, "The best interest finding shall be based upon known information or information

---

[49] Alaska Const. art. VIII, § 1.

-23- 6769

that is made available to the director, even if all potential cumulative impacts of the projects are not known."[50] It is within the discretion of the legislature to limit the parameters of the best interest finding to what is known at the time the finding is made. But the legislature also stated when it created phased review of a project in 1994:

> The legislature finds that . . . consideration of a disposal as a phase of a development project is not intended to artificially divide or segment a proposed development project to avoid thorough review of the project or to avoid consideration of potential future environmental, sociological, or economic effects, but rather is *intended to allow for consideration of those issues when sufficient data are available upon which to make reasoned decisions*.[51]

DNR's position that it is not required to make cumulative impact assessments after the lease sale phase contravenes not only the constitution, but also the legislature's vision when it created phased review. Although best interest findings in future phases are not required under the constitution, DNR must continue to analyze and consider all factors material and relevant to what is in the public interest after the lease sale phase, including the cumulative impacts of the project, and to provide the public with timely and meaningful notice of its cumulative impacts assessment in order to ensure the constitutional principle of maximum use consistent with the public interest is given effect.[52]

DNR argues that in *Greenpeace* we held that cumulative impact analysis is not required by the Alaska Constitution. But in *Greenpeace* we merely concluded that a "formal" "cumulative impact" analysis — using the broad and "rigorous" definition of

---

[50]    Ch. 101, § 1(f)(2), SLA 2001.

[51]    Ch. 38, § 1(11), SLA 1994 (emphasis added) .

[52]    Alaska Const. art. VIII, § 1.

the term "cumulative impact" in the National Environmental Policy Act (NEPA) — was not required in a consistency determination under the Alaska Coastal Management Program.[53] Greenpeace argued that Alaska's constitution and laws required the consistency determination for an offshore oilfield project to include a formal cumulative impact analysis and advocated applying NEPA's definition of cumulative impacts.[54] The State argued that under Alaska law, it was "not required to assess the possible effects of future development projects" but was required to "undertake a whole-project analysis of a project under review."[55] British Petroleum Exploration (Alaska), Inc., the other appellee in the case, argued "[the State] must carefully evaluate the combined impacts of all aspects of the project under review, but it need not examine the project in light of hypothetical or proposed future development in the region."[56] We found BP's and the State's arguments persuasive, concluding that "no convincing support for Greenpeace's theory that [Alaska Coastal Management Program] consistency determinations must formally analyze a project's cumulative impacts, applying the federal definition of

---

[53]     79 P.3d 591, 593-94 (Alaska 2003). The federal regulations implementing the NEPA defined "cumulative impact" as:

> [T]he impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time.

40 C.F.R. § 1508.7 (2002).

[54]     *Greenpeace*, 79 P.3d at 593-94.

[55]     *Id.*

[56]     *Id.* at 594.

cumulative impacts."[57] Instead, we considered cumulative impact analysis under Alaska law to be "less formal" and to entail a "whole-project analysis" that "takes into account all aspects of a project, considered as a whole and its existing development context."[58] We reaffirm our holding in *Greenpeace* here. We reiterate that it is not the court's place to provide instruction on *how* the State should analyze cumulative impacts after the lease sale phase, for that is the legislature's prerogative, so long as the process complies with the Alaska Constitution and the State's duty to take a continuing hard look — including analysis of cumulative impacts — throughout the course of a project.

## V.    CONCLUSION

Because a best interest finding after the lease sale phase is not constitutionally required and because each phase of a project is not a distinct disposal of an interest in state land under AS 38.05.035, we REVERSE the superior court's ruling reversing and remanding the Commissioner's final decision denying reconsideration of DNR's best interest finding. However, we hold that the State is constitutionally required to consider the cumulative impacts at later phases of an oil and gas project.

---

[57]    *Id.*

[58]    *Id.* at 596 (internal quotation marks omitted).