*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CITY & BOROUGH OF JUNEAU, | ) | |
| | ) | Supreme Court Nos. S-15502/15512 |
| Appellant and | ) | |
| Cross-Appellee, | ) | |
| | ) | Superior Court No. 1JU-12-00900 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, LOCAL | ) | |
| BOUNDARY COMMISSION, | ) | |
| | ) | No. 7067 – December 4, 2015 |
| Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PETITIONERS FOR INCORPORATION | ) | |
| OF THE PETERSBURG BOROUGH, | ) | |
| | ) | |
| Appellee and | ) | |
| Cross-Appellant. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: Amy Gurton Mead, Municipal Attorney, Juneau, for Appellant/Cross-Appellee City and Borough of Juneau. Janell M. Hafner, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee State of Alaska, Local Boundary Commission. James T. Brennan and Sara E. Heideman, Hedland, Brennan and Heideman, Anchorage, for Appellee/Cross-Appellant Petitioners for Incorporation of the Petersburg Borough.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I. INTRODUCTION

The primary issue in this appeal is whether the State of Alaska's Local Boundary Commission (Boundary Commission) violated the Alaska Constitution when it approved the incorporation of a new borough over the objection of an existing borough seeking to annex some of the area included in the new borough. We conclude that the Boundary Commission's decision complied with constitutional requirements and therefore affirm the superior court's decision upholding the Boundary Commission's incorporation decision.

## II. FACTS AND PROCEEDINGS

In April 2011 the City of Petersburg petitioned the Boundary Commission to dissolve the City and incorporate a new borough. The proposed Petersburg Borough "consist[ed] of approximately 3,365 square miles of land and 982 square miles of water for a total of 4,347 square miles of land and water." In August the Boundary Commission accepted the petition and published notice.

In October the City and Borough of Juneau notified the Boundary Commission "of its intent to file an annexation petition that will pertain to some of the same boundaries as are at issue in the petition recently filed by the City of Petersburg." Juneau intended to annex almost half of the area sought for the Petersburg Borough, explaining that its proposed annexation petition and Petersburg's incorporation petition "will overlap with respect to 1906 square miles" that had "previously been identified by the Local Boundary Commission as the 'unorganized remnant' of the City and Borough of Juneau." Juneau requested that the Boundary Commission postpone the Petersburg

proceedings "to allow for concurrent consideration and action (or possible consolidation as authorized by 3 AAC 110.430)" on the two petitions.[1]

In November Juneau submitted its annexation petition. Boundary Commission staff recommended denying Juneau's consolidation request, explaining that the Boundary Commission would have Juneau's annexation petition, Juneau's responsive brief in the Petersburg proceedings, and Juneau's comments, and that during the final hearing the Boundary Commission could amend the Petersburg petition. The Boundary Commission ultimately denied Juneau's request for consolidation or postponement, with one commissioner noting that "Juneau . . . will have opportunities to comment and [provide] testimony at the hearing."

Juneau subsequently opposed Petersburg's petition "to the extent that it ask[ed] the [Boundary Commission] to approve incorporation of an area more appropriately annexed to [Juneau]." Juneau supported its position with a report from the Juneau Economic Development Council emphasizing Juneau's ties to the contested area, and argued that:

> Because the contested area has greater associations with [Juneau] than Petersburg, and because Petersburg cannot make the requisite constitutional, statutory, or regulatory showing justifying incorporation of the contested area into a new Petersburg borough, the [Boundary] Commission should amend Petersburg's petition to delete the contested . . . area

---

[1]     *See* 3 Alaska Administrative Code (AAC) 110.430 (2011) ("If two or more petitions pending action by the commission affect all or some portion of the same boundaries, the chair of the commission may consolidate the informational session, briefing schedule, department reports, commission hearing, decisional meeting, or other procedure under this chapter for one or more of those petitions. The commission may consider relevant information from concurrent or conflicting petitions during the process of rendering its decision on any one petition.").

from Cape Fanshaw north to the current [Juneau] borough boundary from any approved Petersburg borough.

Petersburg responded that Juneau previously had declined to seek annexation of the disputed area, and emphasized its own economic, transportation, communication, and historic ties to the area. Petersburg conceded that its proposed northern boundary could move south to exclude Tracy Arm.[2] But Petersburg argued that for the remaining contested area, the borough incorporation factors weighed in Petersburg's favor.

In February 2012 Boundary Commission staff completed a preliminary report recommending that the Boundary Commission amend the proposed Petersburg Borough's boundaries — by removing all of Tracy Arm from the proposed borough to conform to the region's natural geography — but ultimately approve the Petersburg petition. Juneau submitted comments objecting to some of the report's recommendations. Juneau argued that only "one entity with respect to the same contested area" may satisfy the constitution's requirement that "[e]ach borough shall embrace an area and population with common interests to the maximum degree possible."[3] Juneau asserted that the Boundary Commission had to determine whether Juneau or Petersburg "would embrace the overlap area to the maximum degree possible," and that "[g]iven the Report's failure to critically analyze [Juneau's] claim to the contested area . . . any final determination based upon the Preliminary Report would be an abuse of the [Boundary Commission]'s discretion." Juneau argued that it had more common interests and was more closely related to the contested area than Petersburg.

---

[2]    The southern border of the City and Borough of Juneau is a diagonal line dividing the Tracy Arm watershed. The proposed Petersburg Borough's northern border abutted Juneau's southern border, dividing Tracy Arm between the boroughs.

[3]    Alaska Const. art. X, § 3.

In April the Boundary Commission held a preliminary hearing on the Petersburg petition. Juneau expressed concern that the Boundary Commission would "decide [the] Petersburg petition in a vacuum according to whether or not Petersburg standing alone meets the standards of incorporation." Juneau explained:

> [Juneau's] understanding is that the constitution requires [the Boundary Commission] to make decisions of these standards to the maximum degree possible. That you must make findings that wherever you're going to place this boundary the final municipality will have and share common interests with the area and population to the maximum degree possible.

Boundary Commission staff responded:

> [T]he [Boundary] Commission is going to decide whether to approve, amend or deny the Petersburg borough. In the course of making that decision it can take many things into account. It can take the petition, the comments on the petition, the briefs submitted, and it can take anything that has been spoken about at that hearing. But what it is doing is it is determining . . . does the Petersburg petition meet [the constitutional] standard or not . . . taking into account all of the information that it has already been given.

In May Boundary Commission staff produced a final report on Petersburg's petition. The report disagreed with Juneau's contention — that the Alaska Constitution requires that "any areas sought by more than one potential or existing borough should go the borough which has the stronger/strongest common interests" — explaining that "[n]either the constitution, the statutes, nor the regulations call for areas to be part of the best possible borough" and that under the constitution "a borough should be integrated and interrelated as much as possible." The final report reaffirmed the earlier report's findings and recommendation to approve the petition after moving the proposed borough's northern boundary south of Tracy Arm.

In late May and early June the Boundary Commission held a public hearing to address Petersburg's petition. At the hearing Juneau again argued that the Boundary Commission "must create boroughs that embrace common areas . . . and populations with common interests to the maximum degree possible. And that mandate by definition cannot apply to more than one entity." Juneau disagreed with the final report's assessment that the Alaska Constitution does not require areas be a part of the best possible borough. Juneau asserted that "it's incumbent on [the Boundary Commission] to reserve decision on the contested area until [the Boundary Commission] ha[s] throughly considered [Juneau's] competing claims."

The Boundary Commission held a decisional meeting and issued its final decision in August. At the decisional meeting commissioners referred to Juneau's common-interest arguments and noted "that you may not be able to get completely 100 percent common interests" and that common interests may be found across southeast Alaska. In its final decision the Boundary Commission explained:

> Juneau asserted that the proposed Petersburg borough must be compared to the existing City and Borough of Juneau in order to determine which borough would have common interests to the maximum degree possible with the overlapping area. After considering that claim, the [Boundary Commission] determines that the question is instead whether the proposed borough has an area and population with common interests to the maximum degree possible. The Boundary [C]ommission finds that the proposed borough does embrace an area and population with common interests to the maximum degree possible.

But the Boundary Commission also expressly noted that it "considered Juneau's claim to the overlapping area." The Boundary Commission approved the amended Petersburg petition, effectively leaving Tracy Arm for Juneau's later annexation, by a four to one vote.

Juneau appealed to the superior court, asserting that "[t]he constitutional mandate contained in Art[icle] X, sec[tion] 3 that boroughs embrace an area and population with common interests to the maximum degree possible cannot, by definition, apply to more than one entity." It argued that the Boundary Commission failed to determine whether Juneau or Petersburg "best meets the statutory and regulatory standards with respect to the contested area, and to draw boundaries in such a way that creates boroughs that are maximally cohesive." Juneau further asserted that the Boundary Commission "had before it not only its own earlier findings with respect to the model borough boundaries for the area, but it had substantially relevant evidence from [Juneau] . . . . Yet the [Boundary Commission] inexplicably failed to consider any of it." Juneau finally argued that accepting the Petersburg petition and including the overlapping area without considering Juneau's claim to the area was an abuse of the Boundary Commission's discretion.

The Boundary Commission responded that "[t]he underlying premise of Juneau's argument, that the [Boundary Commission] did not consider [Juneau's] evidence is false." The Boundary Commission argued that its decision "established optimal boundaries for the Petersburg Borough." The Boundary Commission concluded that its decision "should be affirmed as it is wholly supported by the record and there is a reasonable basis for the[] decision."

Petersburg asserted that the Boundary Commission "heard, considered and discussed [Juneau's] evidence, both at the decisional meeting and in the decision itself." Petersburg argued that the constitution's common-interest mandate does not require the Boundary Commission "to determine the one, and only one, perfect borough for each region of Alaska" and thus the two petitions did not have to be addressed head-to-head. Petersburg finally argued that the de facto incorporation doctrine precluded Juneau from challenging the Petersburg Borough's existence, and moved to supplement the appellate

record with an affidavit supporting its de facto incorporation argument.[4]  The superior court denied that motion, finding "that the affidavit is not part of the record on appeal and that the record is adequate to conduct a proper review."

The superior court affirmed the Boundary Commission's decision approving the amended petition, noting that "Juneau's claim that the [Boundary] Commission failed to consider Juneau's competing claim to the contested territory fails because the record clearly shows that the [Boundary] Commission considered Juneau's evidence when it approved the Petersburg petition with modifications."  The court explained that the Boundary Commission was tasked with determining the most appropriate boundaries for Petersburg, and that this task "involves a thorough consideration of alternative boundaries which includes the claim put forth by Juneau."  The court therefore concluded that the Boundary Commission was not "required to undertake an inquiry into which municipality — Juneau or Petersburg — best meets the regulatory and statutory standards with respect to the contested area."

After the superior court affirmed the Boundary Commission's decision Petersburg moved for prevailing party attorney's fees, requesting 30% of its attorney's fees incurred during the administrative appeal — $9,594.60.  The court granted the motion in part, awarding Petersburg $1,500 for attorney's fees.

---

[4]      The de facto municipal incorporation doctrine precludes disincorporation when incorporation "is attempted under a proper statute, a good faith effort is made to comply with the statute, the statute is colorably complied with, and the municipality has exercised its powers in good faith."  *Port Valdez Co. v. City of Valdez*, 522 P.2d 1147, 1156 (Alaska 1974).  We have not yet decided whether the de facto incorporation doctrine has been abolished by statute.  *Lake & Peninsula Borough v. Local Boundary Comm'n*, 885 P.2d 1059, 1064 n.20 (Alaska 1994) ("We need not decide whether the Legislature meant to abolish both municipal and private *de facto* corporations . . . ."); *see* AS 10.06.218 ("The doctrines of de jure compliance, de facto corporations, and corporations by estoppel are abolished.").

Juneau now appeals the superior court's decision affirming the Boundary Commission's approval of the amended Petersburg petition. Petersburg cross-appeals the court's denial of its motion to supplement the record with evidence to support its de facto incorporation argument and the court's attorney's fees award.[5]

## III. STANDARD OF REVIEW

"As a general rule, we approach issues independently of the superior court when that court acts as an intermediate court of appeal."[6] "We apply different standards of review to agency decisions depending on the subject of review."[7] "In a review of agency action we substitute our judgment for that of the agency when interpreting the Alaska Constitution . . . ."[8]

"The amount of attorney's fees to award under [former Alaska Appellate] Rule 508(e) is 'a matter committed to the sound discretion of [the] trial courts, when sitting as intermediate appellate tribunals.' "[9]

---

[5]        Because we affirm the superior court's decision affirming the Boundary Commission's incorporation decision, we do not need to decide whether the de facto incorporation doctrine precludes a challenge to an incorporation decision or whether the superior court abused its discretion by denying Petersburg's motion to supplement the record with evidence to support its de facto incorporation arguments.

[6]        *Lake & Peninsula Borough Assembly v. Oberlatz*, 329 P.3d 214, 221 (Alaska 2014) (quoting *City of Nome v. Catholic Bishop of N. Alaska*, 707 P.2d 870, 875 (Alaska 1985)).

[7]        *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 298-99 (Alaska 2014).

[8]        *Alaska Fish & Wildlife Conservation Fund v. State*, 347 P.3d 97, 102 (Alaska 2015).

[9]        *Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1282 (Alaska 2013) (quoting *Rosen v. State Bd. of Pub. Accountancy*, 689 P.2d 478, 482

(continued...)

## IV. DISCUSSION

### A. The Boundary Commission Satisfied The Constitutional Requirement That A Borough Maximize Common Interests.

#### 1. Relevant constitutional, statutory, and regulatory provisions

Article X of the Alaska Constitution addresses local government. Article X, section 1 provides: "The purpose of this article is to provide for maximum local self-government with a minimum of local government units, and to prevent duplication of tax-levying jurisdictions." Article X, section 3 requires that the entire state be divided into organized or unorganized boroughs "in a manner and according to standards provided by law. The standards shall include population, geography, economy, transportation and other factors. Each borough shall embrace an area and population with common interests to the maximum degree possible."

The constitution authorizes the creation of the Boundary Commission: Article X, section 12 provides that "[a] local boundary commission or board shall be established by law . . . [and] may consider any proposed local government boundary change." We have explained that the Boundary Commission was created because "local political decisions do not usually create proper boundaries and . . . boundaries should be established at the state level."[10] Alaska Statute 44.33.812 describes some of the Boundary Commission's powers and duties: "The Local Boundary Commission shall . . . adopt regulations providing standards and procedures for municipal incorporation, annexation, detachment, merger, consolidation, reclassification, and dissolution . . . ."

---

[9] (...continued)
(Alaska 1984)).

[10] *Fairview Pub. Util. Dist. No. One v. City of Anchorage*, 368 P.2d 540, 543 (Alaska 1962).

Under AS 29.05.031 an area may incorporate as a borough if it satisfies population, geographic boundary, economic, and transportation criteria. And under AS 29.05.100(a) the Boundary Commission may accept an incorporation petition upon finding that the petition meets constitutional, statutory, and regulatory requirements and that incorporation "is in the best interests of the state." The Boundary Commission's regulations further delineate the requirements for borough incorporation,[11] and establish procedures for reviewing petitions.[12]

### 2. Juneau's preliminary arguments regarding the Boundary Commission's decision not to consolidate the petitions and the evidence considered by the Boundary Commission

The discretionary consolidation or concurrent consideration of conflicting petitions is authorized by 3 AAC 110.430.[13] Juneau has not challenged this regulation's validity on appeal, and Juneau concedes it "is not suggesting that the [Boundary Commission] was required to consolidate its petition proceedings with [Petersburg's]."

---

[11] *See* 3 AAC 110.045 (providing list of factors to consider, and requiring that "the social, cultural, and economic characteristics and activities of the people in a proposed borough must be interrelated and integrated"); 3 AAC 110.050 (providing list of factors to consider, and requiring that "[t]he population of a proposed borough must be sufficiently large and stable to support the proposed borough government"); 3 AAC 110.055 (providing list of factors to consider, and requiring that "the economy of a proposed borough must include the human and financial resources necessary to provide the development of essential municipal services on an efficient, cost-effective level"); 3 AAC 110.060 (providing list of factors to consider, and requiring that "the boundaries of a proposed borough must conform generally to natural geography, must be on a regional scale suitable for borough government, and must include all land and water necessary to provide the full development of essential municipal services on an efficient, cost-effective level"); 3 AAC 110.065 (providing list of best interests factors to consider).

[12] 3 AAC 110.400-.700.

[13] *See supra* note 1.

But Juneau nonetheless accuses the Boundary Commission of "applying the doctrine of prior jurisdiction,"[14] and asserts that by doing so Juneau was precluded from providing adequate evidence to the Boundary Commission.

Juneau argues that although the Boundary Commission first stated it would consider Juneau's petition, it contradicted itself and determined that it "would only consider comments and briefing related to the Petersburg petition." And Juneau argues that at the decisional hearing "[Juneau] was limited to presenting only those arguments it had presented in its responsive brief to the Petersburg petition. [Juneau] was prohibited from using its own annexation petition or supporting documents — even as demonstrative aids to its witnesses' testimony."

The record does not support Juneau's assertions. The record establishes that the Boundary Commission considered Juneau's alternative consolidation and postponement requests, recognized its own discretionary authority, and exercised its discretion to not consolidate the petitions or let Juneau's petition catch up by postponing consideration of the Petersburg petition. This was not an application of the doctrine of prior jurisdiction, but rather was an exercise of agency discretion that Juneau does not otherwise contest.

The record also establishes that the Boundary Commission allowed Juneau to submit evidence and that the Boundary Commission considered Juneau's evidence —

---

[14]     Before the enactment of 19 AAC 10.835 (1988), since revised and rewritten as 19 AAC 10.430 (1992), and then relocated to 3 AAC 110.430 (1999), "[t]he [Boundary Commission] ha[d] no statutes or regulations that control[led] the situation where two municipalities propose[d] to annex some or all of the same territory." Overlapping Annexation Proposals, 1986 INFORMAL OP. ATT'Y GEN. 341. Thus, in an informal opinion, the attorney general's office recommended applying the common law doctrine of prior jurisdiction. *Id.* "Generally stated, the doctrine is one of first in time, first in right; the first [municipality] to initiate proceedings . . . has priority, to the exclusion of any other [municipality] . . . ." *Id.*

indeed, during oral argument before us Juneau was unable to identify any point in the record when it was precluded from submitting specific evidence that it wanted to submit. Juneau cited to its own annexation petition in the Petersburg proceedings, submitted a report attempting to establish its closer connection to the disputed area, and had witnesses testify at the Petersburg decisional hearing. And the Boundary Commission's final decision expressly considered Juneau's claim to the overlapping area when amending the Petersburg petition: Boundary Commission commissioners noted Juneau's arguments that the contested area was tied to Juneau and "also considered Juneau's advocacy of its ties to the area" before ultimately approving the proposed Petersburg borough, with an amendment excluding Tracy Arm.

### 3. Juneau's constitutional argument[15]

Juneau asserts that under the Alaska Constitution the Boundary Commission must "make boundary determinations from a statewide perspective after ensuring that the resulting borough will encompass a population and area with common interests to the maximum degree possible." Juneau argues that the Boundary Commission violated its constitutional obligation to make borough decisions from a statewide perspective when it refused to conduct a head-to-head analysis to determine whether Juneau or Petersburg "had superior common interests to the contested area."

---

[15] "In construing a constitutional provision, we must give it a reasonable and practical interpretation in accordance with common sense and consonant with the plain meaning and purpose of the provision and the intent of the framers." *Sullivan v. Resisting Envtl. Destruction on Indigenous Lands (REDOIL)*, 311 P.3d 625, 629 (Alaska 2013) (quoting *Legislative Council v. Knowles*, 988 P.2d 604, 607 n.11 (Alaska 1999)) (internal quotation marks omitted).

Juneau primarily relies on our decision in *Petitioners for Incorporation of City & Borough of Yakutat v. Local Boundary Commission*.[16] In *Yakutat* the Boundary Commission had amended an incorporation petition's proposed boundaries before ultimately approving the amended petition.[17] The petitioners appealed, arguing that the Boundary Commission was not authorized to alter the proposed boundaries "without first determining that the proposed borough, with its boundaries unaltered, would fail to meet the statutory standards for incorporation."[18] We concluded that the Boundary Commission could not "alter boundaries of proposed boroughs without any preliminary finding of noncompliance."[19] But noting that the Boundary Commission's statutory powers must be interpreted in accordance with article X, section 3's requirement that "[e]ach borough shall embrace an area and population with common interests to *the maximum degree possible*,"[20] we explained:

> [T]he provisions of AS 29.05.100(a) dealing with the rejection, acceptance, and alteration of proposed boroughs must be interpreted to require that the [Boundary Commission] apply the statutory standards for incorporation in the relative sense implicit in the constitutional term "maximum degree possible." In other words, AS 29.05.100(a) must be construed to mean that, in deciding if the statutory standards for incorporation have been met, the Boundary Commission is required to determine whether the boundaries set out in a petition embrace an area and

---

[16]     900 P.2d 721 (Alaska 1995).

[17]     *Id.* at 722.

[18]     *Id.*

[19]     *Id.* at 725.

[20]     *Id.* (emphasis added) (quoting Alaska Const. art. X, § 3).

population with common interests to the maximum degree possible.[21]

We further explained that "[a]n informed decision as to whether boundaries proposed in a petition for incorporation maximize the common interests of the area and population and thus meet the applicable statutory standards presupposes a thorough consideration of alternative boundaries and a decision as to what boundaries would be optimal."[22]

We ultimately concluded that the Boundary Commission impliedly found the unamended petition failed to maximize common interests "because the commission believed that the affected area lacked sufficient cohesiveness to the remaining area of the borough and enjoyed greater ties and common interests with the Prince William Sound area."[23] We held that the Boundary Commission is not required to "approve any minimally acceptable petition for incorporation . . . . [And] the [Boundary Commission] acted well within the purview of its authority in considering the desirability of future incorporation of neighboring areas such as Prince William Sound and the interests of affected land owners and users . . . ."[24]

Juneau argues that "the *Yakutat* case stands for the proposition that the [Boundary Commission] has no discretion to ignore a competing petition. . . . [T]he [Boundary Commission] must fully consider both petitions before making a boundary determination as to any contested area; it cannot make a constitutionally valid boundary determination without doing so." Juneau further argues that the Alaska Constitution "does not simply require that 'the' resulting borough 'embrace an area and population

---

[21]    *Id.*

[22]    *Id.*

[23]    *Id.* at 726-27.

[24]    *Id.* at 727.

with common interests to the maximum degree possible;' it requires that 'each' borough meet that constitutional standard."[25] Finally Juneau argues that in *Yakutat* we approved the Boundary Commission's comprehensive approach, focusing on the regional effect of a proposed borough boundary and ensuring that other boroughs in addition to the proposed Yakutat borough would maximize common interests.

While the framers' use of the word "each" requires consideration of optimal or alternative boundaries for any proposed borough, the constitution does not mandate the head-to-head analysis Juneau seeks. In *Yakutat* we explained that the Boundary Commission's task is to determine "whether an area is cohesive and prosperous enough for local self-government."[26] We affirmed the Boundary Commission's determination that amended boundaries were the most appropriate for Yakutat, noting the Boundary Commission's specific findings that the proposed Yakutat borough did not have

---

[25]     Juneau's briefing to us also mentions its argument to the trial court:

> [A]s the [Boundary Commission] had already made findings with respect to the area's model borough boundaries with relation to [Juneau], and as [Juneau] had significant and demonstrable ties to the unorganized remnant area, it was incumbent on the [Boundary Commission] to reserve decision on the unorganized remnant area until it had thoroughly considered [Juneau's] claims.

Juneau has not adequately briefed this argument on appeal and it is therefore waived. *See Wilson v. State, Dep't of Law*, 355 P.3d 549, 557 (Alaska 2015) (refusing to consider an inadequately briefed argument). We note that even had Juneau raised this argument, the model borough boundaries are a factor that the Boundary Commission *may* consider. 3 AAC 110.060(b).

[26]     *Yakutat*, 900 P.2d at 726 (quoting *Mobil Oil Corp. v. Local Boundary Comm'n*, 518 P.2d 92, 98 (Alaska 1974)).

sufficient common interests with a specific area included in the incorporation petition.[27] Although we noted that the Prince William Sound area probably had greater ties to the removed area, we emphasized the Boundary Commission's broad discretion to analyze alternative boundaries and determine the " 'most appropriate boundaries' for *the proposed borough*."[28] We did not require analyzing whether Yakutat's petition included only areas that had greater common interests with Yakutat than any other potential borough; rather we affirmed the Boundary Commission's determination of the most desirable boundaries for the Yakutat borough.[29]

But even though the Boundary Commission was not required to analyze the Juneau and Petersburg petitions head-to-head, the Boundary Commission had to determine whether the proposed Petersburg borough "embrace[d] an area with common interests to the maximum degree possible."[30] And this common-interest determination "presupposes a thorough consideration of alternative boundaries and a decision as to what boundaries would be optimal."[31] Contrary to Juneau's assertions, the Boundary Commission did not disclaim a duty to make decisions from a statewide perspective. Rather the Boundary Commission noted that it was not necessarily required to conduct a head-to-head analysis of the competing petitions. And our earlier discussion of the Boundary Commission's full consideration of Juneau's evidence and arguments makes clear that the Boundary Commission fulfilled its duty.

---

[27]    *Id.* at 727 & n.6.

[28]    *Id.* at 725-27 (emphasis added).

[29]    *Id.*

[30]    Alaska Const. art. X, § 3.

[31]    *Yakutat*, 900 P.2d at 725.

We therefore conclude that the Boundary Commission satisfied article X, section 3 and affirm the decision approving the amended Petersburg petition.

**B.  The Superior Court Did Not Abuse Its Discretion When Granting Partial Attorney's Fees.**

Petersburg argues that the superior court should have awarded at least 30% of its fees incurred during the administrative appeal because:  (1) the agency record was 1,658 pages long "and featured multiple factual and legal arguments"; and (2) "[t]he issues in the appeal were of substantial importance to [Petersburg] . . . ."  When the superior court awarded attorney's fees Alaska Appellate Rule 508(e) provided:  "Attorney's fees may be allowed in an amount to be determined by the court."[32]  In administrative appeals:

> The extent to which litigants have been involved in prior administrative proceedings, and the cost thereof, as well as the nature of judicial review and its cost, are factors which a trial court may wish to consider in determining the application of Appellate Rule 508(e).  Likewise, the importance to the litigants of rights asserted is a factor to be considered.[33]

---

[32]  The superior court's order is dated April 24, 2014 and is subject to an earlier version of Rule 508.  Rule 508(e) has since been amended by Supreme Court Order 1843 and now provides:  "Attorney's fees shall not be awarded unless (1) attorney's fees are provided by statute, caselaw, or contract; . . . [or] (4) the appeal was taken under Rule 601, in which case the court shall award the prevailing party 20% of its actual attorney's fees that were necessarily incurred . . . ."  Rule 601 "applies to requests to the superior court to review decisions of the district court or an administrative agency . . . either by appeal or by petition for review."

[33]  *Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1038-39 (Alaska 2005) (quoting *Rosen v. State Bd. of Pub. Accountancy*, 689 P.2d 478, 482-83 (Alaska 1984)).

The court had discretion whether to award any attorney's fees at all, and when awarding fees the court had discretion to award any reasonable amount. Although the length of the administrative record, the complexity of arguments, and the importance of the issues on appeal may have been sufficient to support a conclusion that a 30% attorney's fees award was reasonable, they are insufficient to establish that the superior court's decision to award a substantially smaller amount necessarily was manifestly unreasonable.[34] We therefore affirm the superior court's attorney's fees award.

## V. CONCLUSION

We AFFIRM the superior court's decision upholding the Boundary Commission's approval of Petersburg's incorporation petition as amended, and we AFFIRM the superior court's attorney's fees award to Petersburg.

---

[34] We will overturn an attorney's fees award only if it is manifestly unreasonable. *Id.* at 1038.